## LEVAR *v.* THE STATE.

1. It is not lawful to collect any costs in a peace-warrant case until after the same shall have been returned to and passed upon by the superior court.
2. Where a constable, by color of his office, took from another costs alleged to be due to a magistrate and to himself upon a peace warrant, before the bond required thereon had been returned to the superior court, such

constable was guilty of the offense of extortion, as defined in section 298 of the Penal Code.

3. An officer thus offending can not be excused on the ground that he was ignorant of the law, for he is chargeable with a knowledge of the same, and consequently must be held criminally responsible for his act.

4. The evidence in the present case fully warranted the verdict, and there was no error in refusing to grant a new trial.

Argued October 13, 14, — Decided November 26, 1897.

Indictment for extortion. Before Judge Ross. City court of Macon. June term, 1897.

Levar was a constable. He arrested a woman upon a peace warrant, upon the hearing of which she was bound over. She gave the bond, and he demanded the payment of costs, but no payment was made. Later the justice who issued the warrant wrote up and signed an order, that the State recover of this woman $9.20 as costs in the peace-warrant case; and thereupon issued execution which Levar presented to the woman, and again demanded payment of the money, under threat to seize and sell her goods. She paid him $5 of the amount demanded, taking his receipt therefor. In defense to the indictment against him he set up that he acted in good faith, believing it to be his duty as constable "to serve" the execution, etc. For the other facts see the opinion.

*John R. Cooper, R. H. Culverhouse* and *J. P. Burnett*, for plaintiff in error.

*Robert Hodges, solicitor-general,* contra.

LUMPKIN, P. J.    1. The first question which this case presents for consideration is: does the action taken by a magistrate upon a peace warrant finally dispose of the case thereby originated, or is it to be returned by him to the superior court for further proceedings? The act of December 24th, 1827, "regulating the proceedings on bonds taken for the security of the peace" (embodied in Cobb's Digest, pp. 859, 860), made it the duty of any judge of the inferior court, or justice of the peace, by whom a peace bond was required, to return the same, together with the affidavit or affidavits and other evidence in the case, to the next term of the superior, inferior, or city court which might first thereafter hold its sitting. The act further

made it the duty of the officer prosecuting for the State, in the court to which the bond was returned, on the first day of the term or as soon thereafter as he could be heard, to move the judge or judges presiding to take the same into consideration; and also made it the duty of such judge or judges to examine the evidence so returned and presented, and, if of the opinion that there was no sufficient ground for requiring the bond, to cause the same to be canceled; and in such case it was within the power of the judge or judges to order and direct that the prosecutor pay all the costs and expenses of the case. Another act bearing on the subject of peace warrants was passed February 21st, 1850, and the same may be found in Cobb's Digest on page 865. That act made it the duty of the justice of the peace to hear evidence before exacting from any person a bond to keep the peace, and also permitted the accused party to introduce testimony in order to show that there was no just ground for the issuing of the peace warrant.

In the case of *Keith* v. *State*, 27 *Ga.* 483, decided at the March term, 1859, of this court, it was held, in view of the above-mentioned acts, that "The judge of the superior court has power, on examining and considering the evidence returned with a peace warrant, if it be insufficient to require the giving [of] a bond, to discharge the defendant; and he has, more-over, the discretion to discharge him without the payment of costs, if, in his opinion, there was no foundation for the proceeding." The decision in the case just cited clearly indicates that a judge of the superior court, to which a peace bond had been returned, had the authority to require the accused to pay the costs, but might, in his discretion, put this burden upon the prosecutor. At any rate, it is quite clear that under the acts above mentioned no costs could be lawfully exacted of either party until after the case had been passed upon by the judge of the court to which the peace bond was returned. As to how the amount of costs due the magistrate and constable was to be arrived at, there seems to have been no criterion, unless the law prescribing the fees of these officers in criminal cases was considered applicable. It would seem that cases of this kind were dealt with as being either criminal, or quasi-

criminal, proceedings.    In this connection, it is worthy of note that the act of 1827 designated the party suing out the warrant as "prosecutor," and the act of 1850 referred to the defendant as the "accused party," terms applicable to criminal cases only.

Again, by the act of December 13th, 1859 (Acts of 1859, p. 17), the solicitor-general was "allowed a fee of five dollars for each defendant in a peace warrant tried or disposed of by the court; the fee to be paid by the party against whom the court [should] award judgment."    The preamble of this act recited that it was doubtful whether the solicitor-general was entitled, under then existing laws, to any fee "for attending to peace warrants"; but we find the expression of no similar doubt as to the fees of magistrates and constables in peace-warrant cases. There was no item in the fee-bill for solicitors-general, incorporated in the Code of 1863, allowing the fee of five dollars provided for by the act of 1859; but the fee-bill for these officials in the Code of 1868, and in all the subsequent codes, does allow to the solicitor-general a fee of five dollars "for a peace warrant tried or disposed of by the court."    Thus we have a continuing intimation that, even under the several codes, peace bonds were to be returned to and finally acted upon by superior courts, and that cases of this kind were to be treated as criminal cases.    Moreover, it would seem that since the adoption of the Code of 1863, peace bonds, if returnable by the magistrates to any courts at all, have been returnable to superior courts only.    See section 4633 of the original code, which declares that "the superior court may, at any time, discharge the bond, unless there be a motion to extend it, accompanied by evidence to satisfy the court of the necessity of such extension."    This language has been repeated in all the codes, and may now be found in section 1241 of the new Penal Code.    As will be observed, it mentions no court except the superior court. We have been unable to find any provision in any of the codes in terms making peace bonds returnable to that or to any other court; but are nevertheless satisfied that though many of the above-recited provisions of the act of 1850 were not incorporated in detail in the original or any subsequent code, and

though the language last above quoted does not unequivocally provide that peace bonds shall be returned to the superior court, it is still the law that they shall be so returned. If the provisions of the act of 1850 relating to proceedings upon peace warrants after action thereon by magistrates are still so far of force as to prevent such action from being properly regarded as final, there is no difficulty in reaching the conclusion that the magistrates must return these cases to some court; and since inferior courts have been abolished, and none of the codes confer any jurisdiction in this class of cases upon city courts, it would seem clear that it is to the superior courts alone they must be returned. Upon the assumption, then, that the act of 1850 is still of force to the extent above indicated, the question stated at the beginning of this discussion is obviously to be answered in the affirmative, and the correctness of the proposition laid down in the first headnote, to the effect that no costs can be lawfully collected in a peace-warrant case until after the same shall have been returned to and passed upon by the superior court, would follow as a necessary result.

We are of the opinion that it is not now necessary to decide the question whether or not the act of 1850, with the modifications just indicated, is still of force as a binding and valid legislative enactment. Taking the present provisions of the Penal Code as to peace warrants just as they stand, we can not reach the conclusion that a case originating upon such a warrant is at an end when disposed of by the magistrate, and that a motion in the superior court to discharge or extend a peace bond is an entirely new and distinct proceeding. Our view of the matter is, that the present Penal Code contains enough to warrant a holding that the making of such a motion in the superior court is not the beginning of a new case, but merely an invocation to the judge to make a final disposition of a case already pending. In other words, we think that the substance of so much of the act of 1850 as is essential to this end is still preserved in the law as now written, and accordingly are of the opinion that a peace-warrant case is never finally disposed of by the magistrate, but that it is still his duty to return all the papers to the superior court, where they remain for final

action by the judge of that court; and we also think that it is still the duty of the solicitor-general to render such services in the case as may be appropriate, and that for the same he is entitled to the fee of five dollars, as above stated.

Looking into the history of the peace-warrant proceeding from its beginning down to the present date, we are unable to reach the conclusion that either the General Assembly or the codifiers have ever contemplated that a peace-warrant case should end with the magistrate's action thereon; and although section 1241 of the present Penal Code does not expressly so declare, we think its language necessarily implies that the superior court must take hold of and finally dispose of all peace-warrant cases, and determine upon whom the costs thereof shall fall. We do not know why the codifiers saw proper to omit the details as to procedure which are to be found in the act of 1850. At the same time, we are unable to understand how the superior court can take jurisdiction of and pass any orders in a case not legally before it, but which has been finally disposed of in another court having power to render a binding and conclusive judgment in the case. If a motion relating to a peace bond is to be treated as the commencement of an entirely new proceeding, the conclusion would, of course, be inevitable that the original case ended with the magistrate's order; but we are not prepared to hold that this is a correct view of the law. As far as our knowledge extends, it has been the practice of the judges of the superior courts, ever since the adoption of the first code, to treat peace warrants and bonds returned to these courts as cases pending therein, and we are loath to disturb the system of dealing with such cases which has been observed and acquiesced in under the codes for more than thirty-four years. There is at least one instance in which the correctness of our present position has been recognized by one of the most eminent and learned Justices who ever sat upon this bench. In Stephens v. Wallis, 75 Ga. 727, Mr. Justice Hall, in contrasting a peace warrant with a bastardy proceeding which the defendant could terminate before the magistrate by giving the requisite bond, remarked that, "In the case of a peace warrant or warrant for good behavior, there could be

no such termination of the suit in the magistrate's court; the bond has to be returned to the next term of the superior court."

To sum up, then, our conclusions are, (1) that it is the duty of justices of the peace to return all peace bonds taken by them to the superior court; (2) that the question as to who shall pay the costs therein is to be determined by the judge of the superior court, after proper investigation into the merits of the case; and (3) that the amount of the costs to be taxed in these cases as due to magistrates and constables is to be arrived at by reference to the fee-bills prescribing their compensation in criminal cases. We think that the correctness of the main conclusion will become the more apparent when it is remembered that if the accused in a peace warrant fails to give the bond the magistrate may commit him to jail. In that event, how is he to be discharged? Not by the magistrate, for his power over the case has ended. Not by resort to certiorari, for that remedy, as decided in 75 *Ga.*, supra, does not lie. Not by a habeas corpus court, for the commitment being legal, it could not lawfully be set aside in this collateral way. Such an imprisonment therefore might become perpetual, unless the superior court upon a direct review of the magistrate's order has the power to make such a disposition of the case as the ends of justice may require.

2–4. It has been shown, we think, that no costs can be lawfully collected on a peace warrant until after the same has been returned to the superior court and acted upon by the presiding judge. In the present case, Levar, a constable, under color of his office, exacted from one Rosa Patterson, of whom a bond to keep the peace had been required, the costs alleged to be due to the magistrate and to himself upon the peace warrant. The bond had not been returned to the superior court, and the constable made the collection by virtue of an illegal execution which the magistrate had issued, in the name of the Governor, against the accused. At the time this collection was made, no costs were due upon this peace-warrant proceeding to any person whomsoever; and therefore Levar violated the provisions of section 298 of the Penal Code; in that he unlawfully took, by color of his office, money not due to him.

He was prosecuted for this act, and endeavored to set up as a defense ignorance of the law, and to excuse his unlawful conduct on the ground that he acted in perfect good faith and was guilty of nothing more than an honest error of judgment. The trial judge, in effect, charged that this defense was not good in law, and instructed the jury that Levar, being chargeable with a knowledge of the law, should be held responsible for his acts in violation of the same. This, in our opinion, was the correct view of the matter. There can be no doubt that if a constable, in utter disregard of a plain and unambiguous statute, takes or collects costs "not due to him, or more than his due," he can not be excused on the ground of ignorance; and the same rule is of necessity applicable even where, in a particular instance, the criminality of an unlawful collection of costs is not so obvious, because of the fact that the law bearing upon the subject is involved in more or less confusion and therefore less capable of being easily and readily understood. Under the last-cited section of the Penal Code, the unlawful taking of the costs is a criminal act, no matter with what intent it is done. The intention does not in this kind of a case, as in some others, constitute the gist of the offense.

If the right to collect depends upon the construction of various statutes, and is apparently doubtful, the officer should stop; for if he does not, he will proceed at his peril. It would never do to hold that one who commits an act which the law declares to be criminal and indictable could be excused upon the idea that he honestly and in good faith misunderstood or misconstrued the law. To promulgate such a doctrine would, as Judge Thomas informed the jury in the case of *Dickens* v. *State*, 30 *Ga.* 383, "uproot and destroy the protection of society, and render nugatory, in a great sense, the criminal laws." It is true this court did not, in that case, sustain all the instructions given to the jury; but it said nothing contrary to what is embraced in the language just quoted. On the other hand, Judge Lyon, in pronouncing the opinion of this court, remarked (page 385): "I agree with the court below that the intention is manifested by the act; that ignorance of a law is no excuse for its violation." This is a familiar and well-

4

established principle. To depart from it would be exceedingly dangerous. Case after case would arise, and instances would be multiplied almost without limit, where persons who had committed criminal acts would escape on the ground that they were ignorant of, or did not understand the meaning of, the law which they had violated. There would be no end to such defenses, and the courts would soon find it impossible to efficiently enforce the criminal statutes.

Our conclusion, therefore, is that the trial judge committed no error in charging the jury as above stated; and the conviction was well warranted by the evidence.

*Judgment affirmed. All the Justices concurring.*