## FRASER *v.* THE STATE.

1. There was no abuse of discretion in refusing to postpone the further progress of a trial already begun, when the showing for the postponement disclosed no good reason for granting it.
2. Evidence that one on trial for a criminal offense "claimed the right" to do the act for which he was indicted, if under any circumstances admissible in his favor, is never so unless the claim was made dum fervet opus and constituted a part of the res gestæ.
3. An allegation in a motion for a new trial that error was committed in refusing to admit in evidence a designated record can not be considered when the motion fails to disclose anything as to the contents of such record.
4. It does not affirmatively appear that the lease in controversy in the present case is void for uncertainty in the matter of description.
5. A misapprehension of the meaning of a statute, however honest, constitutes no excuse for crime.

Argued October 18,— Decided October 26, 1900.

Indictment for misdemeanor.   Before Judge Falligant.   Chatham superior court.   August 20, 1900.

*W. P. LaRoche* and *Beckett & Beckett,* for plaintiff in error.

*W. W. Osborne, solicitor-general, W. W. Gordon Jr.,* and *Gignilliat & Stubbs,* contra.

LUMPKIN, P. J.   The plaintiff in error was convicted of violating section 588 of the Penal Code, which reads as follows: " If any person shall, without authority from the owner, take or catch any oysters from any private bed, or remove or deface any oyster-marks, he shall be guilty of a misdemeanor." He made a motion for a new trial, which was overruled, and he excepted.   The material questions thus presented and the facts necessary to an understanding of our rulings thereon are stated and dealt with below.

1. The indictment alleged that the offense was committed on the 28th day of March, 1900.   Augustus Oemler, the only witness sworn in behalf of the State, testified that on September 20, 1899, he saw the accused taking oysters from a private bed belonging to the witness, and that he did not authorize or consent to such taking. Counsel for the accused thereupon moved for " a postponement of the case," stating " that they were surprised and not prepared to try an accusation based on a taking occurring in September, and they had prepared their case to meet the charge and date set out in the indictment."   Complaint is made of the refusal to grant the motion to postpone.   We can not hold that the court erred in this respect. The accused was chargeable by law with knowledge that it would be perfectly competent for the State to prove that the alleged misdemeanor was committed at any time within the two years next preceding the finding of the indictment, and it was incumbent upon him and his counsel to bear this in mind in preparing his defense.   Doubtless it is within the discretion of a trial judge, even after the parties have announced ready in a criminal case, and the trial has accordingly been begun, to grant, at the request of the accused, a postponement if it should be made to appear that the ends of justice require it.   But nothing of the sort was made to appear in the present instance; for, taking the showing made for the postponement at its best, it entirely fails to disclose that the accused, even had he been granted further time, would have been able to overcome the evidence relied on by the State, or to produce any evidence whatever which would benefit him in the least.   Clearly, the showing for a postponement made in this case would have been

entirely without merit had the same, even before the accused announced ready, been made the basis of a motion to continue.

2. One ground of the motion for a new trial was as follows: "Because the court erred in ruling out the question, 'Did they make any claim that they had the right to take oysters there?' The evidence sought to be introduced being that this defendant bona fide claimed the right to take and catch oysters at the place where he was taking them on the day testified to, September 20, 1899. This testimony being material for the jury's consideration in determining the good faith of defendant and his freedom of any criminal intent." It is fairly inferable, though as to this matter the motion is certainly indefinite, that the question referred to in this ground was propounded to Oemler; and, in view of the scope covered by the examination of this witness, it is probable that the pronoun "they," as used in this question, was intended to have reference to the accused and others participating with him in committing the act upon which the indictment was predicated. Still, we are unable to perceive how this ground of the motion furnishes cause for a new trial. Even if the expected answer to the question had shown conclusively that the defendant did bona fide claim the right to take and catch oysters at the place where he was taking them on September 20, 1899, there is nothing to indicate at what time this claim was set up. What the accused claimed could in no possible view be admissible, unless the claim was made at the very time he was actually taking the oysters and for this reason constituted a part of the res gestæ of the act for which he was indicted. Certainly, a claim of good faith made afterwards, at any other time or place, would be nothing more than a declaration by the accused in his own favor, and clearly inadmissible. It does not, therefore, appear that in declining to allow the question to be answered the court excluded proof which it was competent for the accused to introduce in his defense.

3. In another ground of the motion error is assigned upon the refusal of the court to allow the accused to introduce in evidence "the record in the case of Wm. Jones et al. vs. Augustus Oemler." Doubtless the record referred to was that of the case between the parties named which this court passed upon at the last term (110 Ga. 202), but the motion does not affirmatively so disclose. It is therein stated that this record was offered for the purpose of

showing certain facts, but the record itself is not set forth, either literally or in substance. Indeed, not a word of its contents appears. Accordingly, we are unable to determine, from anything appearing in the motion itself, whether the document in question would or would not have shown what the movant in his motion alleges it was offered to show. In this connection, see *Petty* v. *Railway Co.*, 109 *Ga.* 666, 674, and cases cited.

4. The State introduced in evidence a lease from the commissioners of Chatham county, Georgia, to Augustus Oemler, purporting to cover a "tract of land under water, in the county and State aforesaid." The other descriptive terms employed in the lease were as follows: "Commencing at low-water mark at the lower mouth of Big creek, thence along the line of low water 967.9 feet, thence to middle of the river 225 feet, thence along the middle of the river 967.9 feet, thence 225 feet to starting point." It is in the motion for a new trial complained that the court erred in admitting the lease in evidence "over the objection of the prisoner at the bar;" but the motion does not disclose what, if any, specific objection was made to the admissibility of the document when it was tendered. Though it is in the motion alleged that the "description was too vague and uncertain," it does not appear that this objection to it was presented and ruled upon at the trial, and accordingly we can not undertake to pass upon the admissibility of the document. If, however, the description was too uncertain to identify any particular tract of land, the State failed to make out a case; for Oemler, after testifying that this lease covered the premises, in effect admitted that his claim to this land was based exclusively on this lease. We can not say that the description in the lease was insufficient to identify the locus in quo. It was urged in the argument here that it could not be determined in what direction the first line mentioned in the lease ran, whether up the coast or down the coast, and that consequently the descriptive terms employed would apply equally to at least two entirely separate and distinct parcels of realty. This contention is not well founded. The "commencing" point was "low-water mark at the lower mouth of Big creek." It can not be assumed as matter of law that this point is incapable of identification. This being so, and the first line therefrom being "the line of low water," it necessarily ran from the beginning cor-

ner *down* the coast, for it surely could not have been contemplated that it was to extend across the mouth of Big creek, which would have resulted from running it *up* the coast. This being settled, it does not affirmatively appear that there was any practical difficulty in applying the description embraced in the lease to the premises in dispute. It is true that the instrument fails to state at what angles the two lines of 225 feet each were, respectively, to intersect the first line; but, for aught that appears, it may be that the courses of the third line "along the middle of the river," and the length of that line, were such as to make certain at what angles the second and fourth lines must intersect the first in order to give them a length of exactly 225 feet each. A lease can not, as matter of law, be held to be void for uncertainty as to the description, unless it in some way appears that it is too indefinite to be applied to its subject-matter. No such thing was shown in the present instance. On the contrary, there was positive testimony that the lease did cover the very land upon which the offense charged against the accused was alleged to have been committed.

5. The foregoing disposes of all the questions presented by the motion for a new trial which are of sufficient importance to be specially noticed, save one, and upon it the case, in our judgment, really turns. Besides proving that Oemler, under the lease above mentioned, claimed and held the land from which the accused took the oysters, the State introduced in evidence "Drake's chart, known as 'Bulletin No. 19' United States Geodetic Survey," and it was admitted that according to this chart the land leased by Oemler was "vacant of natural oyster-beds." Taking into view the entire brief of the evidence and the statement of the accused, the jury were fully warranted in finding that at the very time he took the oysters he knew of the geodetic survey and of Drake's chart; also, that he was aware that the land upon which he was fishing was claimed by Oemler under a lease, and that according to the chart this land was not a natural oyster-bed. The real defense was that, notwithstanding all this, the accused had a right to take the oysters if the land was in fact a natural oyster-bed and had been erroneously marked as "vacant" on the chart. Accordingly, complaint is made in the motion for a new trial that the court erred in rejecting certain evidence tending to show that the land in dispute was, as matter of fact and notwithstanding what was shown by the chart, a natural oyster-bed.

2

Granting that the rejected evidence would have gone to this extent, there was no error in refusing to admit it.   Under the law as it stood when the lease was granted to Oemler, Drake's chart was conclusive on the question at issue.   *Jones* v. *Oemler*, cited supra.   The accused did not make any mistake of fact; but, conceding that he acted in good faith, he did judge erroneously with respect to the law.   This can not, of course, excuse him.   *Levar* v. *State*, 103 *Ga.* 42.   It is true that at the time Fraser committed the act for which he was indicted, this court had not decided the *Jones* case; but the accused was nevertheless bound to know what the law was.   It would never do to hold that one who did an act which the law makes criminal could be excused because he honestly misapprehended the true meaning of a statute.   The question in such a case is not one of good faith or of diligence in endeavoring to find out what the law was.   It is simply:   Did the accused knowingly do the forbidden act?

*Judgment affirmed.   All the Justices concurring.*