## CLINT D. LEWIS V. THE STATE.

No. 15269. Delivered May 10, 1933.
Rehearing Granted November 8, 1933.
Reported in 64 S. W. (2d) 972.

The opinion states the case.

*W. M. Hilliard,* of Caldwell, *W. D. Hart* and *A. M. Felts,* both of Austin, and *W. W. Hair,* of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for extortion, punishment being three years in the penitentiary.

The indictment substantially charged that appellant was the sheriff of Burleson county, Texas, and that as such he demanded and received from the State of Texas the following fees; one item for $93 purporting to be for traveling by private conveyance from Caldwell, in Burleson county, to Dallas, in Dallas county, and arresting one W. M. Hill and returning him to Burleson county by private conveyance on June 28th, 1930; another item for $93 purporting to be for similar services as to one J. H. Smith on June 27th, 1930; another item for $93 for similar services as to J. H. Smith on June 27th, 1930; another item of $93 for similar services as to A. J. Rogers on June 27th, 1930; another item of $93 for similar services as to A. J. Rayford on June 28th, 1930; another item of $93 for similar services as to A. J. Rogers on June 26, 1930; it was further alleged that appellant demanded, received, and collected from the State of Texas the total sum of $558.00 on the items as aforesaid, claiming to have traveled in performing the services of arresting these named parties in Dallas and returning them to Burleson county, a total distance of 2400 miles. It was then averred that appellant did not travel 2400 miles in performing said services; that only one trip was made from Caldwell in Burleson county to Dallas, and that in fact only two men were ar-

rested and conveyed to Burleson county, to-wit: W. M. Hall and A. J. Rogers, and that in fact only 400 miles were traveled in performing such service; that the two men Hall and Rogers, were conveyed from Dallas to Burleson county at the same time on the same date and by the same conveyance, and that appellant was only entitled to collect the sum of $148.00, and that he did in fact demand and receive from the state of Texas the sum of $410.00 more than he was entitled to under the law.

The evidence for the state shows that three indictments in felony cases were returned against J. H. Smith by the grand jury in Burleson County, and that three indictments in felony cases were also returned by said grand jury against A. J. Rogers. These two men were arrested in Dallas upon capiases issued in the six cases. Smith went by an alias of Hill or Hall, and Rogers by the alias of Rayford. The arrests of the two parties were made by a constable of Burleson county, and he returned them upon one trip and by one conveyance from Dallas to Caldwell. Appellant made returns upon the six capiases in which he showed a charge of $93 for the arrest and conveyance of the prisoners in each of the six cases. In December, 1930, he presented his account against the State of Texas, to the District Judge of Burleson county, as follows:

In cause No. 3960, State of Texas v. A. J. Rayford_____$114.50
In cause No. 3961, State of Texas v. A. J. Rogers_____ 114.50
In cause No. 3956, State of Texas v. W. M. Hill_____ 113.50
In cause No. 3958, State of Texas v. J. H. Smith_____ 113.50
In cause No. 3959, State of Texas v. A. J. Rogers_____ 114.50
In cause No. 3957, State of Texas v. J. H. Smith_____ 113.50

There was included in the account for each case the $93 item heretofore mentioned. Appellant's total account for the term amounted to $2140.25, which account was approved by the district judge, presented to the State Comptroller and a warrant for that amount executed by him, countersigned by the State Treasurer and delivered to appellant. The amount of the warrant was deposited to his credit in the Caldwell National Bank at Caldwell, and the $2140.25 was paid by the State of Texas through correspondent banks.

Appellant testified as follows: "* * * I made the returns on the six capiases in question; I did not write any aliases in any of the capiases, and do not know who did. These capiases were handled by my deputies and by S. S. Woods, constable, whom I sent to Dallas with the capiases to arrest and bring back the two men. I believe all of said capiases show I received them on the 4th of June, 1930, but they were not issued until the 5th of June, 1930, which was my mistake, I did not go to Dallas in

person. Mr. S. S. Woods went for me. The men, A. J. Rogers and J. H. Smith, sometimes went by other names. Smith sometimes went by the name of Hall, and Rogers by the name of A. J. Rayford and A. J. Ray, I do not know whether Mr. Woods went to Dallas and back in his car or not. I thought he did as he always went in his automobile. I made the returns on the capiases which have been introduced in evidence, and I showed the same mileage of 400 miles in each of those capiases. That is the mileage that I thought and believed was the proper charge to make for the services rendered. It is about 200 or 220 miles from Caldwell to Dallas. At the time that I made those returns I did that in good faith. You will find on each of those capiases that I have charged 400 miles for the service of that particular capias. It was not my purpose or intent in making those returns to collect any sum of money from the State of Texas to which I was not entitled. At the time I made the returns on each of those capiases as to distance and the amount of charges, I honestly and in good faith believed that the distance had been traveled and that the charges were proper in amount. I have a charge of 200 miles going to arrest, fifteen cents a mile, $30.00. That said charge is on each of the capiases and on the account. At the time I made that account and placed that item in the charge as against the State of Texas I did that in good faith, believing that it was correct. I did not have any desire to collect one cent of money from the State to which I was not entitled under the law. * * * I did not have any purpose or intent in my mind or heart at that time to get a single nickel or dollar from the State of Texas that I did not think I was entitled to receive. There is a charge of $3.00 on each of those capiases for making an arrest, and in the account. At the time that I made that charge I believed that I was entitled to that $3.00 for making that arrest. At the time I made the returns on each of those six capiases and made my charge for the mileage, I honestly believed that I had a right to make those charges on each of those capiases and to collect those amounts. I had the same idea and purpose in mind when I filled out my account and made the same charges as made in each of the six capiases. If there is any error or mistake in the charges made in this account or in the six cases—Rogers, Rayford, Hall and Smith cases—either in the mileage or in the amount, it was an honest error on my part, if that is not the law."

Appellant assumed that the evidence was undisputed that the warrant was received by him in Burleson county, and that all money received by him on the warrant occurred in Burleson county, and that therefore the venue of the offense was in that

county, and not in Travis county, and requested the court to so instruct the jury. Appellant testified that the warrant was received in Burleson county by mail from Austin. Other evidence in the record may have raised an issue that the warrant was delivered to him personally in Austin. We regard it unnecessary to discuss the question of venue. That point seems very definitely decided against appellant in Townsend v. State, 121 Texas Crim. Rep., 79, 51 S. W. (2d) 696.

After appellant had testified as heretofore set out that he made the charge for the fees in question in good faith believing that he had a right to collect the same, bill of exception 12a shows, if permitted, he would have testified that: "At different times since I have been sheriff I have had more than one capias for the same defendant and served them all at the same time on the same trip and always charged duplicate arrest and mileage, as I did in these cases. The district judges have always approved my accounts and the comptroller has always approved them and they have been paid."

Bill of exception 13 shows that counsel for appellant asked him if in years past he had information from any attorney as to whether or not he had a right to charge duplicate mileage and that if permitted appellant would have answered that he had been advised by several attorneys before he made the returns on the six capiases in question and before he made out this account, that he would have a right to charge duplicate mileage on the capiases executed at the same time and on the same party in separate cases.

Bill of exception 14 shows that if permitted he would have also testified that he consulted his district judge about the charges and asked whether he had a right to charge duplicate mileage in the cases in question, and this judge had advised him that he had a right to charge said duplicate mileage.

Bill of exception 16 shows that he would, if permitted, have testified that the county attorney of his county had advised appellant that where he made an arrest of one party on two or more capiases against the same party, the arrests being made on the same trip at the same time he would have a right to charge mileage on each capias; that he was seeking advice from persons whom he thought knew the law; that he did not know the law himself and that the county attorney did advise him as indicated by his proposed testimony.

Bill of exception 18 shows that he would have testified, if permitted, that he had theretofore charged duplicate mileage when he had more than one case against a party, the same as he did in the account under investigation in the present case,

and that the district judge had theretofore approved his accounts and that the comptroller had likewise approved it and it had been paid.

The several bills of exception show that the testimony was offered upon the issue of appellant's honesty of purpose and good faith in making the charges for which he was being prosecuted, and would be proper facts to go to the jury to enable them to determine whether or not appellant willfully and in bad faith demanded and collected such fees. The testimony offered as shown by the several bills was objected to by the state on the ground that it would be no defense to show that appellant had habitually violated the law, and because the opinion of the district judge could not change the law in the face of the statute, and because the advice of the county attorney and other lawyers would be no defense to the charge against appellant; that the opinion of such attorneys would not change the law inhibiting a duplicate mileage charge. The objection of the state was sustained in each instance and appellant was not permitted to give the proffered testimony.

Article 40, P. C., reads: "No mistake of law excuses one committing an offense."

Many authorities will be found collated under said article in the Notes in Vernon's Ann. Tex. P. C., vol. 1. The tendency of the cases is rather against appellant's contention, but none of them are directly in point as dealing with a charge for "wilfully" collecting fees illegally. In discussing the question under the head of "Extortion," it is said in Bishop on Criminal Law (9th Ed.), sec. 399a, p. 330: "The question of the effect of a mistake in law is a delicate one, upon which it is not easy to lay down any rule with perfect assurance that it will be accepted in all tribunals."

The case of Cutter v. State, 36 N. J. L., 125, is quoted from as authority for holding as follows:

"If a justice of the peace, being called upon to construe a statute with respect to the fees coming to himself, should, exercising due care, form an honest judgment as to his dues, and should act upon such judgment, it would seem palpably unjust, and therefore inconsistent with the ordinary grounds of judicial action, to hold such conduct criminal, if it should happen that a higher tribunal should dissent from the view thus taken, and should decide that the statute was not susceptible of the interpretation put upon it."

Further on in the same opinion, but not quoted by Mr. Bishop, occurs this language: "But it is further argued on the part of the prosecution that as the fees to which the justice

was entitled are fixed by law, and as he cannot set up, as an excuse for his conduct his ignorance of the law, his guilty knowledge is undeniable. The argument goes upon the legal maxim ignorantis legis neminem excusat. But this rule, in its application to the law of crimes, is subject, as it is sometimes in respect to civil rights, to certain important exceptions. Where the act done in malum in se, or where the law which has been infringed *was settled and plain,* the maxim, in its rigor, will be applied; but where the law is not settled, or is obscure, and where the guilty intention, being a necessary constituent of the particular offense, is dependent on a knowledge of the law, this rule, if enforced, would be misapplied."

On the other hand, the court in Levar v. State, 103 Ga., 42, 29 S. E., 467, says: "If the right to collect depends upon the construction of various statutes, and is apparently doubtful, the officer should stop; for if he does not, he will proceed at his peril. It would never do to hold that one who commits an act which the law declares to be criminal and indictable could be excused upon the idea that he honestly and in good faith misunderstood or misconstrued the law."

In People v. Monk (Sup. Ct., Utah), 28 Pac. Rep., 1115, is found a statement as follows: "Indeed, the strongest authorities cited by the learned counsel hold that, where the law which has been infringed upon was *settled and plain,* this maxim (ignorance of the law excuses no man) may be applied with vigor. In this case the statute plainly fixes the legal fee. Nothing is left to surmise or uncertainty. The miners of this mining district had no right to make rules contrary to the laws of the United States or of this territory, and the defendant was bound to know what the law was. To hold that each person called to account for a violation of a penal statute has the legal right to place his own construction upon the meaning of such statute, and claim immunity from punishment for its violation because some usage or custom has grown up in violation of the statute which he believed to be law, would, in effect, nullify and render nugatory many of the criminal statutes of the territory, and render each person who has violated the law the sole judge of his own guilt." (Italics and brackets ours).

As far as any of the authorities which we have examined have gone is that in some jurisdictions it has been held that if the law under which illegal fees are alleged to have been collected is obscure and confusing, and subject to more than one reasonable construction, the accused against a charge of its willful violation may show that he acted under legal advice regarding the fees collected. It is not necessary either to give or

withhold assent to such proposition in the present case. The very statute under which the fees were claimed and collected had been construed by the Supreme Court of this state in Bigham v. Jones, 116 Texas, 348, 291 S. W., 842, it being clearly therein shown what fees an officer was entitled to for such services as were performed in the present instance. This opinion was rendered in February, 1927, more than three years before the fees here involved are claimed to have been earned. If there had ever been any ambiguity in the law regarding what fees could be legally charged and collected it was cleared up in the opinion in the Supreme Court in the case referred to, and the construction there given to the statute involved is against the validity of appellant's claim. We are aware of no decision of any court which holds that the violation of a statute may be defended on the ground of legal advice the effect of which would be to overturn the law as construed by the courts of last resort, or by evidence that a statute was customarily ignored. We are therefore of opinion that the evidence, exclusion of which is complained of in bills of exception numbers 12a, 13, 14, 16 and 18, was properly rejected.

The prosecution was under article 365, P. C., which reads: "If any officer or person authorized by law to demand or receive fees of office, shall *wilfully* collect for himself or for another any fee or fees not allowed by law, or any money as a purported fee for a service or act not done, or any fee or fees due him by law in excess of the fee or fees allowed by law for such service, he shall be confined in the penitentiary not less than two or more than five years for each offense."

In the Townsend case, 121 Texas Crim. Rep., 79, 51 S. W. (2d) 698, it was pointed out at some length why it was necessary in a prosecution under said article to define the term "wilfully," and the reversal of the judgment was predicated on an omission of such definition from the court's instruction. In the present case the court undertook to define the term, but couched it in the following language:

"You are instructed that the word 'wilfully' as used in this charge is defined as follows: Proceeding from a conscious motion of the will; intending the result which actually comes to pass, designed, intentional, malicious."

Appellant directed a specific objection to the foregoing definition as follows:

"Now comes the defendant and further objects and excepts to the charge of the court as a whole and especially to paragraph 7 thereof, wherein the court undertakes to define the word 'wilful' or 'wilfully,' for the reason that the court's defini-

tion is wrong, and the definition given by the court is not the legal definition of the word 'wilfully.' The definition given by the court is the common parlance definition of such word and not the legal definition. That the word 'wilful' in a penal statute means more than it does in common parlance. It means in law in a penal statute 'with evil intent' or without reasonable grounds to believe the act to be lawful. The defendant requests the court to change his said definition of the word 'wilful' in accordance with the suggestion made herein."

The court declined to amend his charge. The definition of "wilfully" here given was the same as that found in the charge in Christian v. State (No. 15,425), which was held erroneous in an opinion delivered on April 12, 1933. We cited in support of the holding Thomas v. State, 14 Texas App., 200, and Trice v. State, 17 Texas App., 43. In addition we call attention to Caldwell v. State, 55 Texas Crim. Rep., 164, 115 S. W., 597. The charge given in the present instance would convey to the lay mind the impression that if the money was intentionally demanded and received by appellant it was "wilfully" done. That such is not true is clear from the opinion in the case last cited. There can be no doubt that appellant intentionally demanded and received the fees the collection of which was the basis of the prosecution. His defense was that he collected them in good faith believing that he was legally entitled to them. That he collected the fees intentionally is not enough. Before he would be guilty of having "wilfully" collected fees not allowed by law he must have demanded and received them without reasonable grounds to believe his act in so doing to be lawful.

In Potter v. U. S., 155 U. S., 438, 39 L. Ed., 214, the court was dealing with a prosecution in which an officer of a bank had been charged with unlawfully and wilfully certifying a check, when the drawer of the check did not have on deposit a sufficient amount of money to cover the same. In discussing the effect generally of the terms "wilfully" and "wilful" in a criminal statute, the court said: "The significance of the word 'wilful' in criminal statutes has been considered by this court. In Felton v. United States, 96 U. S. 699, 702 (24:875, 876) it was said. 'Doing or omitting to do a thing knowingly and wilfully, implies, not only a knowledge of the thing, but a determination with a bad intent, to do it, or to omit doing it. "The word 'wilfully,'" says Chief Justice Shaw; "in the ordinary sense in which it is used in statutes, means, not merely 'voluntarily,' but with a bad purpose." Com. v. Kneeland, 20 Pick, 220. "It is frequently understood," says Bishop, "as signify-

ing an evil intent without justifiable excuse.'" 1 Bishop, Crim. Law., Sec. 428."

The case of Crawford v. Joslyn, 83 Vt., 361, is reported in Annotated Cases, vol. 22, 1912A, page 428. At page 433 is a note under the heading "Taking Illegal Fees" to which we refer.

Because of the error in defining the term "wilfully" the judgment must be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Notwithstanding the judgment was reversed on original submission appellant has filed a motion for rehearing, among other things, urging that the indictment should be held invalid and the prosecution thereunder ordered dismissed. Having in mind the necessity of reversing the judgment for the error pointed out in our original opinion the challenge to the indictment did not at that time receive critical consideration. The indictment in the present case is not unlike that held bad in Remmert v. State, 60 S. W. (2d) 233.

We believe that by reason of the language employed therein article 365, P. C. (copied in our original opinion) defines three distinct offenses instead of specifying three ways in which a particular offense might be committed, the three offenses defined being: (a) The collection by an officer of pay for some act for the doing of which no fee is allowed by law; (b) the collection by an officer for a service or act not in fact performed, (c) collection by an officer of higher fees than allowed by law for a particular service. After defining the three foregoing offenses the article in question says the person offending shall be punished in the manner provided *"for each offense,"* thereby making said article subject to the construction that the Legislature had in mind that the same penalty should attach to *"each"* of the three offenses named in said article. It follows that an indictment which seeks to charge an officer for a violation under said article should contain averments in such definite and specific language that it could be known therefrom which one of the three offenses accused was called upon to answer. If we are correct in the conclusion that in said article 365, three separate felonies are defined, and not three ways of committing one offense, it necessarily follows that an indictment which in one count undertakes to charge accused with committing more than one of such offenses is subject to attack for duplicity. (For distinction drawn and general discussion

of the subject see Texas Jurisprudence, vol. 23, pages 652-662, with citation of many authorities).

The indictment in the present case was attacked in limine for duplicity, and the point properly brought forward.

In a general way it is alleged in the indictment that appellant collected *"higher fees* than are allowed by law in this, to-wit: "* * * then follows averments from which it appears that appellant had collected a sum named for the arrest and transportation of six men from Dallas, Texas, to Caldwell, Texas, when in fact he did not arrest and transport but two men; that he had transported the two men at the same time, but collected double mileage, or "higher fees," that he was entitled to for such service, and for the other men not transported he had collected for a purported service not in fact performed, thus in one count charging the commission of two of the felonies denounced in article 365.

Believing the indictment bad for duplicity, appellant's motion for rehearing is granted to the extent of incorporating what we have here said as additional reasons for the reversal of the judgment, and as a ground for ordering a dismissal of further prosecution under the present indictment.

*Rehearing granted.*