# HOPKINS *v.* STATE

[No. 1, October Term, 1949.]

*Decided  November  9,  1949.*

*Motion  for  rehearing  and/or  modification  of  opinion
filed  November  17,  1949.*

*Motion  for  rehearing  granted  December  6,  1949.*

*Modified  opinion  filed  January  11,  1950.  Judgment
affirmed,  with  costs.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Louis S. Ashman,* with whom was *Edward D. E.
Rollins* on the brief, for the appellant.

*Harrison L. Winter, Assistant Attorney General,* and
*Kenneth C. Proctor, Assistant Attorney General,* with
whom were *Hall Hammond, Attorney General, Henry
L. Constable, State's Attorney for Cecil County,* and
*Gifford Scarborough, Assistant State's Attorney,* on the
brief, for the appellee.

DELAPLAINE, J., delivered the following modified opin-
ion of the Court.

This appeal was taken by the Rev. William F. Hopkins,
of Elkton, from the judgment of conviction entered upon
the verdict of a jury in the Circuit Court for Cecil
County for violation of the statute making it unlawful
to erect or maintain any sign intended to aid in the solici-
tation or performance of marriages. Laws of 1943, ch.
532, Code Supp. 1947, art. 27, sec. 444A.

The State charged that on September 1, 1947, de-
fendant maintained a sign at the entrance to his home at
148 East Main Street in Elkton, and also a sign along
a highway leading into the town, to aid in the solicita-
tion and performance of marriages. Four photographs
were admitted in evidence. One photograph, taken on
an afternoon in September, 1947, shows the sign in
Elkton containing the name "Rev. W. F. Hopkins."
Another, taken at night shows the same sign illuminated
at night by electricity. The third shows the other sign
along the highway containing the words, "W. F. Hopkins,
Notary Public, Information." The fourth shows this
sign illuminated at night.

The State showed that during the month of August,
1947, thirty ministers performed 1,267 marriages in
Cecil County, and of this number defendant performed
286, only three of which were ceremonies in which the
parties were residents of Cecil County.

Defendant did not testify. Several witnesses, how-
ever, testified that, though he has been residing in Elkton,
he has been serving as the pastor of a church with about
40 members in Middletown, Delaware, known as the First
Home Missionary Church.

*First.* Defendant contended that his conviction by the Court below deprives him of the free exercise of religion guaranteed by the First Amendment of the Federal Constitution. The Act of 1943, now under consideration, was passed by the Legislature of Maryland to curb the thriving businesses which unethical ministers had built up as a result of the tremendous increase in the number of couples coming into the State to be married following the passage of stringent marriage laws in nearby States. The first measure passed by the Legislature to suppress these unethical practices was the Act of 1922 making it unlawful for any minister to give or offer to give any money, present or reward to any hotel porter, railroad porter, or any other person as an inducement to direct to said minister any person contemplating matrimony. Laws of 1922, ch. 110, Code 1939, art. 27, sec. 444. In 1937 the Legislature directed that no marriage license shall be delivered by the Clerk of the Court until after the expiration of 48 hours from the time the application is made therefor, provided that any Judge, for good and sufficient cause, may authorize the Clerk to deliver such license at any time after the application. Laws of 1937, ch. 91, Code, art. 62 sec. 5. The Legislature subsequently directed that no such order shall be signed by the Judge unless one or both of the contracting parties are *bona fide* residents of Maryland, except where one of the contracting parties is a member of the armed forces of the United States. Laws of 1941, ch. 529, Laws of 1943, ch. 718, Code Supp. 1947, art. 62, sec. 5.

After the passage of these restrictive Acts, there were still signs in Elkton and along the highways offering information to couples contemplating matrimony. Accordingly in 1943 the Legislature passed the Act, which is now before us, to prohibit billboards, signs, posters or display advertising of any kind, or information booths, intended to aid in the solicitation or performance of marriages. In 1944 this Court in *State v. Clay*, 182 Md.

639, 35 A. 2d 821, held that the Act was a proper exercise of legislative power.

Defendant, however, contended that the Court of Appeals considered only the question whether the Act violated the Fourteenth Amendment of the Federal Constitution, and did not specifically decide whether the Act violated the First Amendment. It is established that freedom of religion, secured by the First Amendment against abridgment by the United States, is also secured to all persons by the Fourteenth Amendment against abridgment by a State. The due process clause has rendered the Legislatures of the States as incompetent as Congress to enact any laws respecting an establishment of religion, or prohibiting the free exercise thereof. *Gitlow v. New York,* 268 U. S. 652, 45 S. Ct. 625, 630, 69 L. Ed. 1138; *Near v. Minnesota,* 283 U. S. 697, 51 S. Ct. 625, 75 L. Ed. 1357; *Schneider v. New Jersey,* 308 U. S. 147, 60 S. Ct. 146, 84 L. Ed. 155; *Cantwell v. Connecticut,* 310 U. S. 296, 60 S. Ct. 900, 84 L. Ed. 1213, 128 A. L. R. 1352; *Baltimore Radio Show v. State,* 193 Md. 300, 67 A. 2d 497, 507. But the First Amendment embraces two concepts, freedom to believe and freedom to act. On one hand, it prevents compulsion by law of the acceptance of any creed or the practice of any form of worship. On the other hand, it safeguards the free exercise of the chosen form of religion. Freedom to believe is absolute, but freedom to act is not. Conduct is subject to regulation for the protection of society. While the power to regulate must be so exercised in every case as not to infringe the protected freedom, the State, by general and nondiscriminatory legislation, may safeguard the peace, good order and comfort of the community without unconstitutionally invading the liberties protected by the Fourteenth Amendment. It is well known that marriage, while from its very nature a sacred obligation, is nevertheless a civil contract and is regulated by law. *Reynolds v. United States,* 98 U. S. 145, 25 L. Ed. 244, 250. And, as we said in *State v. Clay,* 182 Md. 639, 643, 35 A. 2d 821, the unethical practice adopted by some

ministers of erecting large signs near the courthouse and along the highway to aid in the solicitation of marriages was not compatible with the ministerial calling and not practiced by any respectable minister. It has been held that prohibition of polygamy is not unconstitutional as against those who profess a religious belief in polygamy. *Reynolds v. United States,* 98 U. S. 145, 25 L. Ed. 244; *Cleveland v. United States,* 329 U. S. 14, 67 S. Ct. 13, 91 L. Ed. 12. Whether defendant or someone else shall perform a marriage is not a religious question at all, except to those whose religion does not permit them to be married by defendant. The Act is constitutional.

It was insisted by defendant that the jury deprived him of the right to the free exercise of religion by a manifestly improper and unfair verdict. He argued that there was no reason to believe that any marriage was solicited by the sign at the entrance to his home merely because the title "Rev." appeared on the sign. He argued that the jury cannot constitutionally take from him, as the pastor of a church, the right to put his name at the entrance to his home. He maintained that the fact that he had performed a large proportion of the marriages in Elkton was no proof of solicitation, especially since his home is near the courthouse. He urged that it was perfectly clear that the jury had misapplied the statute by deciding that a sign of moderate size containing only his name and the title "Rev." was intended to aid in the solicitation of marriages.

We have held in *Slansky v. State,* 192 Md. 94, 63 A. 2d 599, that Article 15, Section 5, of the Constitution of Maryland, providing that in the trial of all criminal cases the jury shall be the judges of law, as well as of fact does not conflict with the due process clause of the Fourteenth Amendment of the Constitution of the United States. The provision of our State Constitution has been interpreted so as to give to the accused every reasonable consideration possible without trespassing upon the rules of constitutional construction. The judge in a criminal

trial has the right to instruct the jury as to the legal effect of the evidence admitted at the trial. If such an instruction is erroneous, an appeal may be taken to the Court of Appeals. In the case at bar the judge did instruct the jury and he treated the Act as constitutional. The Act is constitutional and the judge was right in so holding. We find no error in the Judge's instruction. Moreover, defendant, after the jury rendered their verdict of guilty, filed a motion for a new trial. He was then given an opportunity to be heard upon any contentions as to abridgment of his constitutional rights. But the trial judge overruled his motion. We find no basis for the contention that the judgment in this case abridges defendant's constitutional rights.

*Second.* Defendant contended that the judge erred in excluding testimony offered to show that the State's Attorney advised him in 1944 before he erected the signs, that they would not violate the law. It is generally held that the advice of counsel, even though followed in good faith, furnishes no excuse to a person for violating the law and cannot be relied upon as a defense in a criminal action. *Forwood v. State,* 49 Md. 531, 538; *Miller v. United States,* 4 Cir., 277 F. 721. Moreover, advice given by a public official, even a State's Attorney, that a contemplated act is not criminal will not excuse an offender if, as a matter of law, the act performed did amount to a violation of the law. *State v. Foster,* 22 R. I. 163, 46 A. 833, 50 L. R. A. 339; *Staley v. State,* 89 Neb. 701, 131 N. W. 1028, 34 L. R. A., N. S., 613; *State v. Whiteaker,* 118 Or. 656, 247 P. 1077. These rules are founded upon the maxim that ignorance of the law will not excuse its violation. If an accused could be exempted from punishment for crime by reason of the advice of counsel, such advice would become paramount to the law.

While ignorance of fact may sometimes be admitted as evidence of lack of criminal intent, ignorance of the law ordinarily does not give immunity from punishment for crime, for every man is presumed to intend the necessary and legitimate consequences of what he know-

ingly does. In the case at bar defendant did not claim that the State's Attorney misled him regarding any facts of the case, but only that the State's Attorney advised him as to the law based upon the facts. Defendant was aware of the penal statute enacted by the Legislature. He knew what he wanted to do, and he did the thing he intended to do. He claims merely that he was given advice regarding his legal rights. If there was any mistake, it was a mistake of law and not of fact. If the right of a person to erect a sign of a certain type and size depends upon the construction and application of a penal statute, and the right is somewhat doubtful, he erects the sign at his peril. In other words, a person who commits an act which the law declares to be criminal cannot be excused from punishment upon the theory that he misconstrued or misapplied the law. *Levar v. State,* 103 Ga. 42, 29 S. E. 467, 470; *Lewis v. State,* 124 Tex. Cr. R. 582, 64 S. W. 2d 972, 975. For these reasons the exclusion of the testimony offered to show that defendant had sought and received advice from the State's Attorney was not prejudicial error.

*Third.* Defendant now complains of the testimony of the Rev. Arthur J. Gibson, pastor of the Elkton Presbyterian Church and secretary and treasurer of the Cecil County Ministerial Association, that 32 Protestant ministers were members of this association, but that defendant was not a member of it. It is an elementary rule that evidence, in order to be admissible, must be relevant to the issues and must tend either to establish or disprove them, and evidence which does not tend to describe or explain the facts and circumstances of the case is inadmissible. The Court should exclude collateral facts, which do not afford a reasonable presumption or inference as to the principal matter in dispute. The reason for this rule is that the admission of collateral facts would tend to draw the minds of the jurors away from the point in issue and arouse their prejudices and mislead them. It is also established that the admission of irrelevant evidence will not require reversal if it

appears that the evidence was not prejudicial. *Hitzelberger v. State,* 174 Md. 152, 161, 197 A. 605; *Pearson v. State,* 182 Md. 1, 13, 31 A. 2d 624; *Duncan v. State,* 190 Md. 486, 58 A. 2d. 906.

Defendant objected in the Court below to the following questions: (1) Do you know if there is a Minister's Association in Cecil County? (2) Can you state who the officers of that organization are? (3) What is the purpose of that organization? (4) Is it necessary that you have a Church to belong to the organization? The objections to these questions were overruled. The witness answered that there is such an organization in Cecil County; gave the names of the officers; explained its purposes; and expressed the opinion that it is necessary to have a Church to belong to the organization.

The witness then went on to testify without objection that he believed the organization is a membership of Churches rather than a membership of individuals, since the pastors of the Churches are invited to the meetings. He also testified that 32 Churches are represented in the organization, the pastor of each Church being a member.

It was then that the witness was asked whether defendant was a member of the organization. He replied: "I have no record of his name."

All of this testimony concerning the Ministerial Association was irrelevant, but none of it was prejudicial except the final answer indicating that defendant was not a member of the organization. No objection was made in the Court below to the final question. No motion was made to strike out this testimony, and there was no ruling by the Court. Hence, there is no basis for the claim on this appeal that the Court committed reversible error. *Davis v. State,* 189 Md. 269, 55 A. 2d 702, 704.

*Judgment affirmed, with costs.*