# DOROTHY LOU STEVENSON *v.* STATE OF MARYLAND

[No. 98, September Term, 1979.]

*Decided December 17, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with

whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. ELDRIDGE, COLE and DAVIDSON, JJ., dissent, ELDRIDGE, J., filed a dissenting opinion at page 189 *infra,* in which COLE, J., concurs in Part III, and in which DAVIDSON, J., concurs.

We granted certiorari in this criminal cause "limited solely to the question whether the trial court denied [the accused] the right to due process guaranteed by the XIV Amendment [to the United States Constitution] when it gave advisory rather than binding [jury] instructions." In other words, our review here is confined to whether Article 23 of the Declaration of Rights to the Maryland Constitution, which provides that the jury in a criminal case "shall be the Judges of Law, as well as of fact," is unconstitutional because the provision, as construed by this Court, facially deprives a defendant of the federally secured right to due process of law. Recognizing the purely legal nature of this query, a brief summary of the facts will suffice.

Petitioner Dorothy Lou Stevenson was convicted by a jury in the Circuit Court for Kent County (Clark, J.) of the first degree murder of her husband and of setting a fire while perpetrating a crime. She was subsequently sentenced to concurrent terms of life imprisonment and three years, respectively. On appeal, the Court of Special Appeals, in an unreported opinion, affirmed these convictions.

The record shows that Mr. Stevenson's death occurred on July 18, 1977, as a result of second and third degree burns which he suffered from a fire in his home bedroom nineteen days earlier. At the trial, the central question was how the fire started, and extensive testimony was taken to resolve that issue. From this evidence, the following facts may be distilled: On the morning of the fire, petitioner discovered

her husband in bed on his boat with another woman. Following a brief argument, petitioner left the boat and returned to the family home where she awaited her husband. Upon his arrival five hours later, a second argument erupted between the Stevensons concerning the husband's infidelity. According to a statement given by Mr. Stevenson shortly before his death, this heated discussion had ended with his wife leaving the house; he then went to bed, but was later awakened when the petitioner poured gasoline on him and ignited it with a match. Mrs. Stevenson's version of the events of that morning differed dramatically: According to her statement given to police on the day of the fire, which was introduced at trial without objection (she did not testify), the wife and husband were arguing in their bedroom when Mr. Stevenson advanced towards her in a threatening manner and Mrs. Stevenson, in self-defense, threw a pitcher of gasoline at her husband to impede his approach. Asked how the pitcher happened to be nearby, the petitioner responded by saying that "I brought it in the house yesterday, because I was going to clean up the yard for a swimming pool and I didn't take it out again." Moreover, the wife disavowed any complicity in starting the fire — "I didn't light no matches or nothing. [The gasoline] just exploded when I threw it." The jury, however, was not convinced and convicted Mrs. Stevenson both of the first degree murder of her husband and of setting the fire while perpetrating a crime.

The gravamen of petitioner's claim of error is that she was denied due process when the trial judge refused to give her following requested pre and post-evidence instructions to the jury:

*Pre-evidence.*

The law as given by this court in its instructions to you constitutes the only law for your guidance, and it is your duty to accept and follow it. It is your duty to follow the law as I give it even though you may disagree with the law.

*Post-evidence.*

It is your duty as jurors to follow the law as stated in the instructions of the court, and to apply the rules of law so given to the facts as you find them from the evidence in the case. Counsel may refer to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by counsel and that stated by the court in these instructions, you of course are to be governed by the instructions.

Instead of these requested directives, which the court ruled were contrary to the law of this State, Judge Clark proceeded to give the jury, both in oral and written form, an extensive set of "preliminary instructions" [1] which included a brief explanation of the jury's unique constitutional role in the trial of criminal cases in this State. The jury was informed that "[u]nder the Constitution of Maryland, [you are] the judge of the law as well as of the facts. Therefore, anything which I may say about the law, including any instructions which I may give you, is merely advisory and you are not in any way bound by it." At the close of the evidence, however, when the court actually "instructed" the jury as to the applicable substantive law, Md. Rule 757 d, the judge did not again mention that his statements concerning the law were for its guidance and not binding; rather he couched all of his remarks in mandatory language. No question has been raised concerning the propriety of the individual instructions given here, other than the failure to inform the jury that all instructions on the law were binding on it. [2]

---

1. This Court has recently held that any such preliminary remarks are not post-evidence "instructions" to the jury within the meaning of Maryland Rule 757. Lansdowne v. State, 287 Md. 232, 243-48, 412 A.2d 88, 94-96 (1980). Moreover, we believe that such extensive preliminary instructions as the record discloses were given here, covering matters that are ordinarily included in the court's instructions at the conclusion of the evidence, are apt to be confusing to the jury and the giving of them is to be discouraged.

2. Because of the extensive comments of the dissenting opinion on this point, it becomes advisable that we set out in particular the petitioner's objections noted in the trial court which relate to this appeal. The first mention in the circuit court concerning the issue before us followed preliminary remarks to the jury (delivered by the trial judge prior to the opening

Consequently, we only address, as requested by the petitioner, whether Article 23 which, as interpreted by this Court, requires that jury instructions on the law be advisory

statements of counsel and the introduction of any evidence), the pertinent part of which we have just set out in the body of this opinion, where petitioner's attorney stated: "The defense takes exception to the Court's failure to give instruction requested in #5 [(quoted in the text labelled "pre-evidence")] as to the binding nature of the Court's instructions, rather than advisory instructions." The only other objection concerning this matter was noted subsequent to the final court instructions to the jury: "[T]he defense wishes to except to the Court's failure to give the instruction requested by the defense in paragraph two of the Request for Final Instructions [(quoted in the text labelled "post-evidence")], that is, that the instructions of the Court are binding on the jury and not merely advisory." From this, it is clear to us that the gravamen of petitioner's objection is that the giving of advisory instructions required by Article 23 with regard to the law applicable to the case is a violation of fourteenth amendment due process of law, and that therefore the trial court committed reversible error when it failed to give the jury the binding instruction that petitioner requested. The requirements for preservation for appellate review of objections to instructions are clear:

> If a party has an objection to any instructions, to any omission therefrom, or to the failure to give an instruction he shall make the objection on the record before the jury retires to consider its verdict and shall state distinctly the matter or omission, or failure to instruct to which he objects and the grounds of his objection. [Maryland Rule 757 f.]

If the dissent is correct that the basis of the petitioner's objection was the specific instruction given, rather than the unconstitutionality of advisory instructions in general, that basis was neither properly presented to nor ruled upon by the trial court and, thus, is not before this Court on appeal. Maryland Rule 885. We are bolstered in our conclusion as to the precise nature of petitioner's objection by the argument made by her counsel at the motion for a new trial following her conviction by the jury:

> [T]he third point raised in the Motion for New Trial is perhaps not really addressable by this Court at this time, and that is the Court's instructions were given as advisory rather than binding. I think it is fair to say that this Court is bound, or might well feel itself bound, by the requirements of many Maryland cases that the instructions were given as advisory rather than binding. Nevertheless, it is the Defense contention that to give instructions as advisory rather than binding violates fundamental constitutional due process. . . .

* * *

> Without elaborating on all of the cases upon which we base our Constitutional argument, *in sum it is that advisory instructions are by their nature [a] violation of the due process clause of the 14th Amendment to the United States Constitution,* in that they offer no guidance, in that a jury is free to ignore the law, in that a jury is free to impose guilt based on its interpretation of the law, and therefore there is inadequate notice as to what's unlawful and

only, is itself violative of the United States Constitution. This Maryland constitutionally declared right provides in pertinent part:

In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact, except that the Court may pass upon the sufficiency of the evidence to sustain a conviction.

### (i)

### *Background*

Article 23, although not in this identical form, was first incorporated into the constitution of this State by the adoption of Article X, section 5 of the Maryland Constitution of 1851.[3] The debates of the 1851 Constitutional Convention, while shedding little light on the meaning of that article, do reveal that the motivation for its adoption was a concern by the delegates regarding the lack of uniformity in Maryland in the practice of instructing juries. *See* II *Debates and Proceedings of the Maryland Reform Convention to Revise the State Constitution* 768 (May 7, 1851). As Judge Niles explains in his work on Maryland constitutional law:

In the convention of 1851, there were opposing views as to the power of a jury in a criminal case, which prevailed in different parts of the state, and

---

also inadequate guidance in decision-making. *That's really all I have on that point.* (Emphasis supplied).

Moreover, nowhere in the petition for certiorari, or in the briefs filed in this case, do we discern a contention by petitioner other than that Article 23 is itself violative of the fourteenth amendment's prohibition against the denial of due process of law.

**3.** A similar provision was retained in the Constitution of 1864 as Article XII, § 4, and in the Constitution of 1867 as Article XV, § 5. By amendment approved by the voters in 1978, however, Article XV, § 5 of the Constitution of 1867 was transferred and became Article 23 of the Declaration of Rights to that Constitution.

During the first one hundred years of its existence the provision simply read: "In the trial of all criminal cases, the jury shall be the judges of law as well as fact." By chapter 407 of the Acts of 1949, ratified by the voters of this State on November 7, 1950, this section was amended to read as it does today.

to guard in the future against such conflicts, the provision ... was inserted in the Constitution. [A. Niles, *Maryland Constitutional Law* 340 (1915).]

*Accord,* Jacobsohn, *The Right to Disagree: Judges, Juries, and The Administration of Criminal Justice in Maryland,* 1976 Wash. U.L.Q. 571, 574. *See generally Beard v. State,* 71 Md. 275, 279, 17 A. 1044, 1045 (1889); Prescott, *Juries as Judges of the Law: Should the Practice be Continued?,* 60 Md. St. Bar Ass'n 246, 247 (1955). Article 23, however, reflects deeper currents of concern relative to administering criminal justice in this State, as Judge Delaplaine noted in his opinion for this Court in *Slansky v. State,* 192 Md. 94, 63 A.2d 599 (1949):

> In England the question whether the jury should have the right to decide the law in criminal cases was for centuries the subject of controversy. But at the time of American independence the prevailing rule of the common law in England was that the court should judge the law, and the jury should apply the law to the facts. This doctrine was condemned by some of the Colonial statesmen, notably John Adams, who believed that the juries should be entitled to disregard the arbitrary and unjust rulings of the judges holding office by authority of the Crown. ... In some of the New England Colonies it was fully understood that the judges held office not for the purpose of deciding causes, for the jury decided all questions of both law and fact, but merely to preserve order and see that the parties were treated fairly before the jury. This procedure received patriotic justification as increasingly oppressive measures were taken by royal officials. ...
>
> The restrictions upon the province of the judges in this State were thus due less to the English practice than to the habits to which they themselves had become accustomed in administering the law of the Colonies. ... "The colonists had had experience of

the close connection of criminal law with politics. ... [T]heir constant fear of political oppression through the criminal law led them and the generation following ... to give excessive power to juries and to limit or even cut off the power of the trial judge to control the trial and hold the jury to its province." [*Id.* at 101-02, 63 A.2d at 601-02 (quoting R. Pound, *The Spirit of the Common Law* 122-23).]

*Accord, Jacobsohn, supra,* 1976 Wash. U.L.Q. at 573-75. Because Article 23 was designed to curb the power of the judiciary, this Court has long held that if a trial judge should consider it necessary to instruct the jury as to the applicable criminal law, which since 1950 he may be required to do, *Giles v. State,* 229 Md. 370, 383-84, 183 A.2d 359, 365 (1962), *appeal dismissed,* 372 U.S. 767 (1963), he should be careful not to intrude on the jury's prerogative, and thus must couch his instructions on the law in advisory form in order that jurors may "subject them to the test of their own independent judgment." *Dick v. State,* 107 Md. 11, 20, 68 A. 286, 290 (1907); *accord, e.g., Schanker v. State,* 208 Md. 15, 21-22, 116 A.2d 363, 367 (1955); *Beard v. State, supra,* 71 Md. at 279, 17 A. at 1045; *Wheeler v. State,* 42 Md. 563, 570 (1875). This practice is now enshrined in Maryland Rule 757. With this brief background, we will now turn to the specific constitutional challenge presented by this appeal.

Since its adoption by the people of Maryland in the Constitution of 1851, this Court has twice considered, and rejected, the contention that Article 23 is in conflict with the fourteenth amendment to the United States Constitution as depriving an accused of his liberty without due process of law. *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1962), *appeal dismissed,* 372 U.S. 767 (1963); *Slansky v. State,* 192 Md. 94, 63 A.2d 599 (1949). See also *Hopkins v. State,* 193 Md. 489, 69 A.2d 456 (1950) (reaffirming *Slansky* without analysis). The Fourth Circuit Court of Appeals has likewise rejected such a challenge, *Wyley v. Warden, Maryland Penitentiary,* 372 F.2d 742 (4th Cir. 1967), *cert. denied,* 389 U.S. 863 (1967), as has the United States District Court,

*Wilkins v. State of Maryland,* 402 F. Supp. 76 (D. Md. 1975). We are nonetheless asked again to review our previous decisions concerning this issue because, in the words of the petitioner, the "[subsequently] evolving standards of due process and a revised view of federalism have changed the nature of the standards against which state trials and state procedures are [now] measured." While we agree that the United States Supreme Court's interpretation of the due process clause has changed dramatically since we last examined this question in *Giles,* this Court, however, still "cannot accept the contention. . . [that this] anachronistic procedure, which has been followed throughout the State for [over] a century and in many sections of the State for possibly two centuries" deprives a criminal defendant of due process of law. *Slansky v. State, supra,* 192 Md. at 106-07, 63 A.2d at 604.

(ii)

*Scope of Article 23*

Before analyzing petitioner's specific contentions, we must first determine what "law" it is that a jury is entitled to "judge" under Article 23, because only after we have established the sweep of the article's mandate can its federal constitutionality be tested. *See, e.g., Stone v. Wainwright,* 414 U.S. 21, 22-23, 94 S. Ct. 190, 38 L. Ed. 2d 179 (1973) *(per curiam)* (constitutionality of state law depends on construction of state's highest court); *Mahoney v. Beyers,* 187 Md. 81, 87, 48 A.2d 600, 604 (1946); *State v. Petrushansky,* 183 Md. 67, 73, 36 A.2d 533, 536 (1944). Despite Article 23's facial breadth, it is a postulate well recognized in the prior decisions of this Court, and one which the United States Supreme Court correctly observed in *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), that Article 23 "does not mean precisely what it seems to say." *Id.* at 89. *See, e.g., Giles v. State, supra,* 229 Md. at 382-83, 183 A.2d at 365; *Hitchcock v. State,* 213 Md. 273, 283, 131 A.2d 714, 718 (1957). From its inception, the

right of juries in this State to decide the law has not been construed by this Court as all-inclusive, but to encompass a much more limited scope. *E.g., Giles v. State, supra,* 229 Md. at 383, 183 A.2d at 365. The outer boundaries of what is now Article 23 were first set forth in an opinion by Chief Judge LeGrand (speaking for himself, but with the expressed approval in this regard of all the other members of this Court) in the case of *Franklin v. State,* 12 Md. 236 (1858), decided just seven years after the adoption of this article's predecessor into the organic law of Maryland. Faced with the specific question of whether the constitutionality of statutes was within the province of the jury under this new constitutional practice, the Chief Judge wrote:

> It was argued, that the true interpretation of these words authorized the jury to judge of the constitutionality of the Act of Assembly. In this opinion I do not concur. The debates which took place in the Convention that framed the Constitution, show what were the reasons that induced the adoption of the section . . . . It was well known that some members, both of the judiciary and the profession, held, that juries in criminal cases were the judges of law as well as fact, whilst others held a directly contrary opinion. It is not now important to inquire on which side there was a preponderance of authority and reason. When the meaning of the terms are fixed, there is an end to controversy in regard to the relative powers of court and jury.
>
> So far as I know, there is no instance in which a court admitted that the words, "judges of law as well as fact," authorized the jury to decide on the constitutionality of a law. With those who insisted upon the enlarged power conferred by the words in our Constitution, there was no pretense that it authorized a judgment by a jury of the constitutionality of an Act of Congress or of the State Legislature. *All they contended for was, that in a criminal case the jury were not bound to abide*

*by the interpretation of the court of the meaning of a law, but were free to construe and apply it according to their own judgments.* They never pretended the jury had the right to decide on the constitutionality of an Act defining murder, arson or any other crime, but that *they had the right to affix their own meaning on the particular law,* and to determine for themselves, whether the facts proven brought the traverser within that meaning. The words in the Constitution have no greater significance since their incorporation into the organic law than they had previously,[4] and I think I have given to them the broadest latitude ever sanctioned or seriously countenanced by any respectable authority. [*Id.* at 245-46 (Emphasis added).]

As this lengthy attribution indicates, and our later decisions confirm, the jury was not granted, by Article 23, the power to decide all matters that may be correctly included under the generic label — "law." Rather, its authority is limited to deciding "the law of the crime," *Wheeler v. The State,* 42 Md. 563, 570 (1875), or "the definition of the crime," as well as "the legal effect of the evidence before [the jury]." *Beard v. State,* 71 Md. 275, 280, 17 A. 1044, 1045 (1889). And this Court has consistently interpreted this constitutional provision as restraining the jury's law deciding power to this limited, albeit important, area. Thus, we have held that it is not within the province of the jury to decide whether a statute has been repealed, *Nolan v. State,* 157 Md. 332, 340, 146 A. 268, 271 (1929), whether it has operative effect, *Slymer v. State,* 62 Md. 237, 241 (1884), or if it is unconstitutional, *Hitchcock v. State, supra,* 213 Md. at 283-84, 131 A.2d at 718-19; *Franklin v. State, supra.* Moreover, we have decided that juries are not permitted to hear or act upon preliminary questions such as the court's jurisdiction. *Kelly v. State,* 151 Md. 87, 98-99, 133

4. Early references to the practice are found in The State v. Buchanan, 5 H. & J. 317 (1821) and Baker v. The State, 2 H. & J. 6, 7 (1806).

A. 899, 903 (1926). See also *Hitchcock v. State, supra;* Dennis, *Maryland's Antique Constitutional Thorn,* 92 U. Pa. L. Rev. 34, 39 (1943). In addition to these restrictions, it has been long recognized that questions of admissibility of evidence and competency of witnesses are for the court alone to determine and were not transferred to the jury for decision by Article 23. *E.g., Lewis v. State,* 285 Md. 705, 724, 404 A.2d 1073, 1083 (1979); *Giles v. State, supra,* 229 Md. at 383, 183 A.2d at 365; *Vogel v. State,* 163 Md. 267, 272, 162 A. 705, 708 (1932); *Bell, alias Kimball v. State,* 57 Md. 108, 120 (1881); *Wheeler v. State, supra,* 42 Md. at 570. *See Brady v. Maryland, supra,* 373 U.S. at 89-90. In fact, viewed affirmatively, the past decisions of this Court make it quite evident that the jury's role in judging the law under Article 23 is confined "to *resolv[ing] conflicting interpretations of the law [of the crime]* and to decid[ing] whether th[at] law should be applied in dubious factual situations," *and nothing more. Dillon v. State,* 277 Md. 571, 581, 357 A.2d 360, 367 (1976) (emphasis in original); *see Hamilton v. State,* 265 Md. 256, 288 A.2d 885, *cert. denied,* 409 U.S. 1006 (1972); *Schanker v. State,* 208 Md. 15, 21, 116 A.2d 363, 367 (1955). Even this area of the jury's exclusive domain, however, has limitations. For example, in *Blackwell v. State,* 278 Md. 466, 365 A.2d 545 (1976), *cert. denied,* 431 U.S. 918 (1977), we pointed out that Article 23 "does not confer upon [it] . . . untrammeled discretion to enact new law or to repeal or ignore clearly existing law as whim, fancy, compassion or malevolence should dictate, even within the limited confines of a single criminal case." *Id.* at 479, 365 A.2d at 553. Moreover, since "it is the duty of a jury to decide a case according to the established rules of law, . . . if it should misapply the law to the prejudice of the accused, and the trial court has the power to set aside the verdict and grant a new trial." *Giles v. State, supra,* 229 Md. at 384, 183 A.2d at 365; *accord, Beard v. State, supra.*

Implicit in the decisions of this Court limiting the jury's judicial role to the "law of the crime" is a recognition that all other legal issues are for the judge alone to decide. Because of this division of the law-judging function between judge

and jury, it is incumbent upon a trial judge to carefully delineate for the jury the following dichotomy: (i) that the jury, under Article 23, is the final arbiter of disputes as to the substantive "law of the crime," as well as the "legal effect of the evidence," and that any comments by the judge concerning these matters are advisory only; and (ii) that, by virtue of this same constitutional provision, all other aspects of law (e.g., the burden of proof, the requirement of unanimity, the validity of a statute) are beyond the jury's pale, and that the judge's comments on these matters are binding upon that body. In other words, the jury should not be informed that all of the court's instructions are merely advisory; rather only that portion of the charge addressed to the former areas of "law" may be regarded as non-binding by it, and it is only these aspects of the "law" which counsel may dispute in their respective arguments to the jury.[5] On the other hand, the jury should be informed that the judge's charge with regard to any other legal matter is binding and may not be disregarded by it. An explicit example of this may be seen from an examination of this Court's recent opinion in *Lewis v. State, supra,* where we held that, although both a judge and the jury may be called upon to determine the voluntariness of a confession, instructions to the jury with respect to the type of consideration to be given by that body to such a confession are binding on it since admissiblity of evidence is not "law" which the jury may decide.

Furthermore, and aside from the supremacy clause contained in Article VI of the United States Constitution, jurors, no less than the judges of this Court, or any other

---

5. A recent study of Maryland's jury practice under Article 23 points out that counsel's discussion of the law contributes positively to the system of criminal justice in this State because such discussions "may occasionally be more illuminating and educational for the jury than the judge's carefully drafted explanation." Jacobsohn, *The Right to Disagree: Judges, Juries, and The Administration of Criminal Justice in Maryland,* 1976 Wash. U. L. Q. 571, 602. It is interesting to note that after examining the Maryland system from a practical, as well as a theoretical, viewpoint, Professor Jacobsohn concludes that, because Article 23 permits juries to "dull the sharp edge of the law" and do equity in an appropriate case, it "serves a useful, if not critical, purpose in the administration of criminal justice in Maryland, and therefore should be retained." *Id.* at 606.

citizen of the State, owe paramount allegiance to, and are bound by, the Constitution of the United States through the independent dictates of Article 2 of the Maryland Declaration of Rights, by which *"all the People of this State are . . . bound* [by the federal Constitution]; anything in the Constitution ... of this State to the contrary notwithstanding." [6] (Emphasis added). It is, of course, a well-established maxim of constitutional interpretation that, as far as possible, each provision of the constitution should be construed to harmonize with all of its other provisions. *E.g., Kadan v. Bd. of Sup. of Elections,* 273 Md. 406, 415, 329 A.2d 702, 707 (1974); *Reed v. McKeldin,* 207 Md. 553, 561, 115 A.2d 281, 285 (1955). Thus, we believe that even if federal constitutional law were otherwise a part of the "law" which a jury is to decide by virtue of Article 23, Article 2 indicates that it was not so intended to be, because to so construe Article 23 would place these two constitutional provisions in conflict with each other. Consequently, harmonizing Articles 2 and 23 of the Declaration of Rights so that they do not conflict, *see Price v. State,* 160 Md. 670, 672-73, 154 A. 556, 557 (1931), supports our previously indicated conclusions that the word "law" as it is used in Article 23 is not as all encompassing as it otherwise may be when used in some other context.

(iii)

*Contention that Article 23 Violates Strictures of United States Constitution*

Having examined the reach of Article 23, we now determine whether that section, as interpreted by our prior decisions, can pass muster under the guaranties accorded to state criminal defendants by the due process clause of the

---

**6.** Article 2 of the Declaration of Rights reads in full:

The Constitution of the United States, and the Laws made, or which shall be made, in pursuance thereof, and all Treaties made, or which shall be made, under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of

federal constitution. "Due process of law," as that phrase is generally understood in the field of criminal law, "is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). At the time of our decisions in *Slansky v. State,* 192 Md. 94, 63 A.2d 599 (1949) and *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1962), the test of whether due process had been violated by a particular criminal procedure was to determine how the right or practice in question was viewed during the time when the meaning of due process was in a formative state and before it was incorporated into our national organic law. Consonant with the prevailing view at the time of *Slansky* and *Giles,* if the challenged practice existed at the time of the fourteenth amendment's adoption, then due process of law was provided. *See Twining v. New Jersey,* 211 U.S. 78, 100-01, 29 S. Ct. 14, 53 L. Ed. 97 (1908), *overruled in Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964); *Slansky v. State, supra,* 192 Md. at 100-01, 63 A.2d at 601. This approach to questions of due process is, however, no longer viable, as the following passage makes evident:

> No longer are questions regarding the constitutionality of particular criminal procedures resolved by focusing alone on the element in question and ascertaining whether a system of criminal justice might be imagined in which a fair trial could be afforded in the absence of that particular element. Rather, the focus is, as it should be, on the fundamentality of that element viewed in the context of the basic Anglo-American jurisprudential system common to the States. [*Johnson*

---

this State, and all the People of this State, are, and shall be bound thereby; anything in the Constitution or Law of this State to the contrary notwithstanding.

This provision first became part of our organic law in the aftermath of the war between the States. *See* Anderson v. Baker, 23 Md. 531, 616-18 (1865); [1864] Md. Decl. of Rts., Art. 5. Included as part of this binding law are the decisions of the United States Supreme Court construing the federal constitution. Merrick v. State, 283 Md. 1, 7 n. 6, 389 A.2d 328, 331 n. 6 (1978); Baker, Whitfield and Wilson v. State, 15 Md. App. 73, 78, 289 A.2d 348, 351 (1972), *cert. denied,* 411 U.S. 969 (1973).

*v. Louisiana,* 406 U.S. 356, 372 n. 9, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972) (Powell, J. concurring).]

*Accord, Duncan v. Louisiana,* 391 U.S. 145, 149 n. 14, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). As a consequence, the Supreme Court "has looked increasingly to the Bill of Rights for guidance, [with the result that] many of the rights guaranteed [defendants] by the first eight Amendments to the Constitution have been held to be protected against state action by the Due Process Clause of the Fourteenth Amendment." *Id.* at 148. See, e.g., *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (right to be convicted only on proof beyond a reasonable doubt); *Duncan v. Louisiana, supra* (sixth amendment right to a jury trial); *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) (fifth amendment right to be free from compelled self-incrimination; no comment on defendant's failure to testify); *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964) (fifth amendment right to be free from compelled self-incrimination); *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (sixth amendment right to counsel); *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) (fourth amendment right to be free from unreasonable searches and seizures and to have excluded from criminal trial any evidence illegally seized).[7] Thus, whether Article 23 violates due process depends primarily on whether it undermines any of the specific safeguards which are now applicable to criminal trials in this State by virtue of the fourteenth amendment to the United States Constitution.

---

7. We should note that a number of these rights were afforded to defendants in this State long before the Supreme Court interpreted the fourteenth amendment as guaranteeing to them like privileges as a matter of federal constitutional law. *See, e.g.,* Md. Decl. of Rts., Art. 21 (right to trial by jury); Md. Decl. of Rts., Art. 22 (right to be free from compelled self-incrimination); Md. Code (1974, 1980 Repl. Vol.), Courts Art., § 9-107 (no inference can be drawn from defendant's failure to take the stand; part of Code since 1876; this Court, however, has held that this prohibition flows from Art. 22 of the Declaration of Rights itself, Barber v. State, 191 Md. 555, 566, 62 A.2d 616, 621 (1948)); State v. Grady, 276 Md. 178, 181, 345 A.2d 436, 438 (1975) (proof beyond reasonable doubt standard was well-established in this State before *In re Winship*).

In this regard, petitioner first contends that to allow the jury considering her case generally to determine the law, with only advisory instructions to guide it, interferes with her sixth amendment right to trial by jury, guaranteed to state criminal defendants through the fourteenth amendment as interpreted in *Duncan v. Louisiana, supra.* A fundamental element of this right, in the petitioner's view, is to be tried by a jury which only decides questions of fact and then determines guilt or innocence by applying to these findings binding instructions with regard to the law as explained by the judge. In support of her assertion, petitioner primarily relies on the decision of the Supreme Court in *Sparf v. United States,* 156 U.S. 51, 15 S. Ct. 273, 39 L. Ed. 343 (1895), where it was held that, in a federal criminal trial, the jury was to decide only questions of fact, leaving legal issues for the judge's consideration. While we agree with petitioner that the Court in *Sparf* did limit the role of juries in federal criminal trials, we do not believe that it did so because it was a constitutionally required aspect of the jury trial right. In *Sparf,* the defendants challenged the trial court's refusal to tell the jury that it was not bound by the court's instructions as to the law, *id.* at 59; thus, the question posed for consideration by the Court was whether the refusal to give the requested charge "was an interference with [the jury's] legitimate functions, and, therefore, with the constitutional right of the accused to be tried by a jury." [8] *Id.* at 99; *accord, id.* at 169 (Gray, J., dissenting) (the question is, "what are the rights . . . of persons accused of crime, and of juries summoned and empaneled to try them, under the Constitution of the United States"). After an extensive historical review of the relationship of the judge and jury in the trial process, the Supreme Court determined that, since the function of the jury at common law was solely that of a factfinder, the right to a trial by jury contained in the federal constitution did not entail the right to have the jury decide questions of law. Thus, the Court in *Sparf* did not prohibit

---

**8.** The Supreme Court did not indicate whether it was the jury trial provision of Article III, section 2, clause 3 or the sixth amendment or both which influenced the decision in *Sparf.*

juries from deciding legal issues because of a conflict with the constitution, but merely held that the jury right of a defendant did not include the additional privilege of permitting juries to determine legal matters.

Even if the Supreme Court's decision in *Sparf* could be read as prohibiting a jury from deciding questions of law because of a conflict with the constitutional right to a jury, that Court has yet to extend the holding of *Sparf* to state jury trials despite a number of opportunities to do so. *See, e.g., Wyley v. Warden, Maryland Penitentiary,* 372 F.2d 742 (4th Cir.), *cert. denied,* 389 U.S. 863 (1967); *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1962), *appeal dismissed,* 372 U.S. 767 (1963) (lack of substantial federal question); *Bremer v. State,* 18 Md. App. 291, 307 A.2d 503 (1973), *cert. denied,* 415 U.S. 930 (1974); *cf. Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (discusses Maryland constitutional provision making juries judges of law). Moreover, we believe that recent Supreme Court decisions with regard to the jury trial right cast considerable doubt on whether this element of trial by jury established in *Sparf* would still be a viable component of that right in federal trials, or if it is, whether it now extends as a matter of due process to state trials. *See Apodaca v. Oregon,* 406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972); *Johnson v. Louisiana,* 406 U.S. 356, 92 S. Ct. 1620, 32 L. Ed. 2d 152 (1972); *Williams v. Florida,* 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446 (1970). *See generally Burch v. Louisiana,* 441 U.S. 130, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979); *Ballew v. Georgia,* 435 U.S. 223, 98 S. Ct. 1029, 55 L. Ed. 2d 234 (1978). Prior to its decision in *Williams v. Florida, supra,* in which the Supreme Court held that juries composed of less than twelve persons were constitutionally permissible, the process of determining the content of the sixth amendment's jury trial provision was based on "the easy assumption ... that if a given feature existed in a jury at common law in 1789, then it was necessarily preserved in the United States Constitution." *Id.* at 92; *accord, Apodaca v. Oregon, supra,* 406 U.S. at 408-09; *id.* at 370 n. 6 (Powell, J., concurring); *State v. McKay,* 280 Md. 558, 563, 375 A.2d 228, 231 (1977).

In *Williams,* however, the Supreme Court rejected this historical approach to the sixth amendment, and instead began to examine the scope of that amendment's jury trial clause from the standpoint of its purpose in our scheme of criminal justice; thus, if a particular feature of the common law jury is essential to the function and purpose of a jury trial, then it is required by the sixth amendment. *Williams v. Florida, supra,* 399 U.S. at 99-100; *see Burch v. Louisiana, supra,* 441 U.S. at 134; *Apodaca v. Oregon, supra,* 406 U.S. at 410. Because the purpose of trial by jury, as noted in *Duncan,* is to prevent governmental oppression by providing "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge," *Duncan v. Louisiana, supra,* 391 U.S. at 156, the Court has determined that "the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the common sense judgment of a group of laymen . . . ." *Williams v. Florida, supra,* 399 U.S. at 100. Accordingly, the Supreme Court held that juries of less than the traditional twelve do not conflict with the constitution, *id.,* and that unanimity is not an indispensable element of state jury trials. *see Apodaca v. Oregon, supra,* 406 U.S. at 410-11 (plurality opinion), although unanimity remains a requirement in federal prosecutions. *Id.* at 369-71 (Powell, J., concurring); *accord, Andres v. United States,* 333 U.S. 740, 748-49, 68 S. Ct. 880, 92 L. Ed. 1055 (1948); *Patton v. United States,* 281 U.S. 276, 288-90, 50 S. Ct. 253, 74 L. Ed. 854 (1930); *Maxwell v. Dow,* 176 U.S. 581, 586, 20 S. Ct. 448, 44 L. Ed. 597 (1900).

What these decisions demonstrate is that all aspects of the common law jury trial no longer may be presumed to be required by the sixth amendment. Of the essential elements of such a trial identified by Supreme Court decisions prior to *Williams* and *Apodaca* — the 12-person jury, the presence and superintendence of a judge having the power to instruct the jury on the law and to advise them upon the facts, and the unanimous verdict, *Patton v. United States, supra,* 281 U.S. at 288; *accord, State v. McKay, supra,* 280 Md. at 563, 375 A.2d at 231 — two of them (the 12-person jury and

unanimous verdict) have been held to be no longer mandatory, particularly in state criminal trials. While this Court recognizes that the Supreme Court has yet to decide whether the remaining element of trial by jury identified in *Sparf*— juries as triers of fact only and not as judges of law — is still a necessary component of the sixth amendment (if it ever was), it seems to us quite unlikely, in light of the standard adopted in *Williams* and *Apodaca,* i.e., is the feature essential to the function and purpose of a jury, that the Court would still continue its fact-law distinction.[9] Furthermore, there is reason to question whether the *Sparf* requirement will be imposed on state criminal proceedings as a matter of due process in light of the fact that opinions of the Supreme Court have suggested that the states be permitted to experiment with the actual operation of juries so long as the fundamental purpose of the right — safeguarding the accused against official oppression — remains intact. *See Burch v. Louisiana, supra,* 441 U.S. at 136-39; *Johnson v. Louisiana, supra,* 406 U.S. at 359-60; *Apodaca v. Oregon, supra,* 406 U.S. at 372-75 (Powell, J., concurring); *cf., Bloom v. Illinois,* 391 U.S. 194, 213, 88 S. Ct. 1444, 20 L. Ed. 2d 522 (1968) (Fortas, J., concurring) (federal requirements of jury trials may not be essential to due process and thus not obligatory on the states); *Alexander v. Louisiana,* 405 U.S. 625, 637 n. 4, 92 S. Ct. 1221, 31 L. Ed. 2d 536 (1972) (Douglas, J., concurring) (same). The Supreme Court has, on more than one occasion, expressly stated that "[t]he states are free to allocate functions between judge and jury as they see fit." *Stein v. New York,* 346 U.S. 156, 179, 73 S. Ct. 1077, 97 L. Ed. 1522 (1953); *accord, e.g., Spencer v. Texas,* 385 U.S. 554, 560, 87 S. Ct. 648, 17 L. Ed. 2d 606 (1967) (states have wide leeway in dividing judge-jury responsibilities); *Jackson v. Denno,* 378 U.S. 368, 391 n. 19, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (specifically reaffirming this aspect of *Stein v. New York* while otherwise overruling the decision);

---

**9.** At least one member of the Supreme Court has indicated that the *Sparf* decision may not be viable today. Apodaca v. Oregon, 406 U.S. 404, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972) (concurring opinion of Powell, J., at 406 U.S. 370 n. 6).

*Chicago, R.I. & P.R. Co. v. Cole,* 251 U.S. 54, 56, 40 S. Ct. 68, 64 L. Ed. 133 (1919). *See also Johnson v. Louisiana, supra,* 406 U.S. at 359-60; 2 F. Busch, *Law and Tactics in Jury Trials* § 194, at 332 (1959). Consequently, since Maryland's constitutional provision, making juries judges of the law, enhances the purpose of a trial by jury by interposing a neutral interpreter of the law between the accused and the accusing government, *e.g., Slansky v. State, supra,* 192 Md. at 101-02, 63 A.2d at 602; *Apodaca v. Oregon, supra,* 406 U.S. at 374 n. 11 (Powell, J., concurring), we hold that this provision of our organic law does not violate the sixth amendment right to trial by jury as it applies to criminal trials in this State under the due process clause of the fourteenth amendment.

In addition to the alleged violation of her right to trial by jury, Stevenson also contends that the following constitutional rights are infringed by the Maryland practice under Article 23: (i) the privilege against compelled self-incrimination, including the prohibition against drawing unfavorable inferences from the defendant's failure to testify, *Malloy v. Hogan, supra; Griffin v. California, supra;* (ii) the presumption of innocence, *Taylor v. Kentucky,* 436 U.S. 478, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978); *but see Kentucky v. Whorton,* 441 U.S. 786, 99 S. Ct. 2088, 60 L. Ed. 2d 640 (1979); and (iii) the requirement of proof beyond a reasonable doubt, *In re Winship, supra; Mullaney v. Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). While she does recognize that the trial judge here did properly instruct the jury with respect to these matters, petitioner nonetheless asserts that, as sole judges of law, the jury is not only free to disregard the presumption of innocence and the prohibition on inferring anything from her silence, but it may also lessen the State's burden of proof from beyond a reasonable doubt to some much reduced level. As we previously stated in this opinion, however, matters such as these are not within the jury's Article 23 law-judging function, but are the subject of binding instructions by the judge; thus, this contention may be rejected without further comment.

(iv)

*Conclusion*

For the reasons explained, we reaffirm our holdings in *Giles* and *Slansky* that permitting juries, in criminal cases, to be "Judges of Law" does not violate the due process clause of the fourteenth amendment. In reaching this result, we are, as were our predecessors well over a centruy ago in a similar context, comforted by the realization that:

> The ultimate object of this appeal is to annul the organic law of the State, the act of a sovereign Convention .... Our province is not to make or unmake Constitutions, but to interpret them; not by the light of reason and common sense alone, or that higher law which has been invoked, but which has no oracle, but by the text of the Constitution of the United States, as construed by its authorized expounders.
>
> If we err in our conclusions, we congratulate ourselves there is a Supreme Court erected expressly for the final adjudication of such questions, where our judgment may be reviewed and corrected, and the rights of the citizen vindicated. To this we cheerfully defer confidant that none will more cordially concur in the result. [*Anderson v. Baker,* 23 Md. 531, 629 (1865).]

> *Judgment of the Court of Special Appeals affirmed.*
> *Costs to be paid by petitioner.*

*Eldridge, J., dissenting:*

The majority has construed Article 23 of the Maryland Declaration of Rights to make juries in criminal cases the judges of the law only in certain circumstances, finding this permissible under the Fourteenth Amendment to the United States Constitution. The Court then upholds a murder conviction which is based upon an instruction empowering

the jury to reject any or all of the trial judge's other instructions, whether relating to the well-established elements of a particular crime, who has the burden of proof, the standard of proof, the defendant's rights, etc. For several reasons, I believe that a conviction grounded upon such instruction cannot be squared with the Fourteenth Amendment.

*First,* Article 23 of the Declaration of Rights, by authorizing a jury to disregard the trial judge's instructions embodying the law, is inconsistent with the due process requirement that one is entitled to be tried in accordance with the applicable law of the jurisdiction. It is true that, under the majority's construction of Article 23, the jury's authorization to disregard the law is confined to situations involving "conflicting interpretations of the law of the crime." Nevertheless, the violation of a due process right does not become justifiable by limiting the circumstances under which the violation will be upheld.

*Second,* Article 23, even given the limited scope delineated by the majority, violates the jury trial clause of the Sixth Amendment, deemed applicable to state court proceedings by the Fourteenth Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968), and *Sparf v. United States,* 156 U.S. 51, 15 S. Ct. 273, 39 L. Ed. 343 (1895).

*Third,* the instruction given in this case empowered the jury to disregard a panoply of specific rights guaranteed by the Fourteenth Amendment, such as the right not to testify, the presumption of innocence, the right to the "reasonable doubt" standard of proof, etc. The majority, while apparently not upholding the constitutionality of the instruction, or of Maryland Rule 757 which mandates an instruction like the one given in this case, asserts that the validity of the instruction actually given was neither properly raised at trial, nor ruled upon by the trial court, nor presented to this Court. In my view, the defendant's counsel consistently objected to the trial court's giving advisory rather than binding instructions on the law; the trial court and the intermediate appellate court clearly understood and rejected

this position, and this was the very issue presented by the petition for a writ of certiorari, briefs and oral argument in this Court.

## I.

An essential principle of "due process of law" is the right to have a case tried and decided in accordance with the law of the jurisdiction. As Justice Black has stated for the Court (*Giaccio v. Pennsylvania,* 382 U.S. 399, 403, 86 S. Ct. 518, 521, 15 L. Ed. 2d 447, 450 (1966)):

> "Certainly one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land."

Throughout the United States the trial judge, because of his position, learning and experience in the law, is relied upon to insure that the jury is correctly instructed in the law.[1] By this means, and the necessary presumption that jurors follow the judge's instructions, the American legal system insures as best it can that a criminal defendant is tried in accordance with the applicable law of the jurisdiction. Where an appeal is provided by law, as in most cases, the correctness of the trial judge's instructions with respect to any unresolved "conflicting interpretations of the law of the crime" can be tested by an exception and an appeal, ultimately to the highest court of the jurisdiction. If, upon resolution by the highest court, it turns out that the trial judge incorrectly resolved a "conflicting interpretation of the law of the crime," the defendant will receive a new trial with proper instructions binding the jury.

---

1. In Maryland today, a defendant in a criminal case is entitled, upon request, to such instructions as correctly state the applicable law. This includes instructions in those areas of law which, under the majority opinion, fall within the jury's province as the judge of the law. See Maryland Rule 757.

This system of insuring that a criminal defendant is tried in accordance with the law is present in virtually all American jurisdictions except Maryland. In Maryland alone, as to those matters where the lay jury is the "judge of the law" rather than the trial judge, there is much less assurance that the defendant will be tried in accordance with law. While the trial judge may give the jurors advisory instructions correctly stating the applicable standard concerning "conflicting interpretations of the law of the crime," he emphasizes in the same breath that the jurors may disregard his instructions and that it is their province, not his, to determine the existing law. For example, the trial judge in the present case instructed the jury that "anything which I may say about the law, including any instructions which I may give you, is merely advisory and you are not in any way bound by it." He went on: "You may feel free to reject my advice on the law and to arrive at your own independent conclusions. You are to make the sole determination as to ... what the law is in this case." Such explicit authorization for the jury to ignore the law as set forth in the court's instructions cannot be reconciled with the right to be tried "in accordance with the valid laws of the land." 382 U.S. at 403.

Furthermore, affording the right of appeal does not rectify this deprivation of due process. Although the trial judge's "advisory" instructions may be reviewed, there is no way for an appellate court to review the jury's determination of the applicable law. What the jury finds the existing law to be, pursuant to the authority granted by Article 23 and the trial court's implementing instruction, seldom if ever will appear on the record. Moreover, reviewing courts have no way of knowing whether two different juries, at the same time, have come to opposite conclusions concerning the existing law applicable to identical fact situations. Conflicting views of different trial judges as to the law can be resolved on appeal; conflicting views of different juries cannot.

Article 23, by granting a criminal jury the license to disregard legally correct instructions on the law, and find

the law to be otherwise than it is, violates a defendant's right to be tried in accordance with the law of the jurisdiction and, therefore, violates the Due Process Clause of the Fourteenth Amendment.

## II.

I also believe that Article 23 is inconsistent with the jury trial clause of the Sixth Amendment, deemed applicable to state court proceedings by the Fourteenth Amendment. In *Sparf v. United States, supra,* 156 U.S. 51, the Supreme Court settled the matter for federal proceedings, holding that the proper role of a jury at common law and under the Constitution was to be the judge only of the facts and not the law. Although the precise basis for the *Sparf* decision at the time may be a source of some controversy,[2] it signalled the end of dispute, except for this State, over the legitimate role of the jury. Several state courts, relying upon *Sparf,* have held that under jury trial clauses of state constitutions comparable to the Sixth Amendment, the proper role of the jury is limited to finding the facts. *State v. Gannon,* 75 Conn. 576, 52 A. 727 (1902); *People v. Bruner,* 343 Ill. 146, 175 N.E. 400 (1931); *Roesel v. State,* 62 N.J.L. 368, 41 A. 408 (1898). Furthermore, regardless of the original basis for *Sparf,* the decision in that case is viewed today as delineating the role of the jury under the Sixth Amendment. *See Johnson v. Louisiana,* 406 U.S. 356, 370-371 n. 6, 92 S. Ct. 1635, 1637-1638, 32 L. Ed. 2d 152 (1972) (Powell, J., concurring).

Consequently, I believe that the Sixth Amendment provision for trial by jury in criminal cases contemplates a

---

**2.** The Supreme Court's lengthy opinion in the *Sparf* case, including material quoted with approval from other cases, makes several references to the Constitution, suggesting that the holding was required under federal constitutional provisions then applicable to federal court proceedings. 156 U.S. at 64, 74, 75, 78, 83, 86. At the same time, the Court seemed to indicate that statutes or constitutional provisions (presumably in the several states) could authorize the jury to be the judge of the law. 156 U.S. at 102. *Compare* G. Simon, *Jury Nullification in the American System: A Skeptical View,* 54 Tex. L. Rev. 488, 489-490 (1976), *with* Johnson v. Louisiana, 406 U.S. 356, 370-371 n. 6, 92 S. Ct. 1635, 1637-1638, 32 L. Ed. 2d 152 (1972) (Powell, J., concurring).

jury which is the judge of the facts, receiving binding instructions on the law from the court. Because *Duncan v. Louisiana, supra,* 391 U.S. 145, held that the Sixth Amendment jury trial clause is applicable to state court proceedings, the provision of Article 23 of the Maryland Declaration of Rights, making criminal juries the judges of the law, is also invalid on this ground.

## III.

For the reasons set forth in Parts I and II above, I believe that Article 23, whether given its literal meaning or as construed by the Court today, facially deprives a criminal defendant of his Fourteenth Amendment right to due process of law. However, assuming arguendo that Article 23 as now construed is facially constitutional, the instruction actually given in this case empowered the jury to disregard several specific federal constitutional rights protected by the Fourteenth Amendment. Furthermore, the instruction was objected to; the defendant's position was rejected by the trial court; and the question concerning the validity of the instruction was fully presented to this Court. For this reason also the defendant's conviction should be reversed on federal constitutional grounds.

### (a)

In the course of his preliminary and final instructions in this case, the trial judge instructed the jury on numerous occasions that the State had the burden of proof, both generally as well as regarding various specific matters. Thus, e.g., the judge told the jury that the State had the burden to prove that the killing was not legally justifiable, that it was not done in self-defense, that there was an absence of mitigating circumstances which would reduce the crime to manslaughter. These "burden of proof" instructions embodied the due process requirements set forth by the Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). Similarly, both in general

and with respect to many particular matters, the trial judge told the jury that the standard of proof was "proof beyond a reasonable doubt." This is the standard mandated by the Fourteenth Amendment's Due Process Clause under the holding of *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). In addition, the trial judge instructed the jury that the defendant's guilt or innocence must be established only "through evidence introduced at trial," thereby reflecting the due process principle set forth in *Estelle v. Williams,* 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976), and other cases. The trial judge additionally instructed the jury that the defendant was presumed to be innocent, a due process standard under *Taylor v. Kentucky,* 436 U.S. 478, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978). The trial judge also admonished the jury that it could not "attach any significance or draw any inference of guilt from the defendant's failure to testify" and that it "must not presume any inference of guilt because she chose not to take the stand." This instruction was in accord with the Supreme Court's holding in *Griffin v. California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).

At the same time that he gave the above-mentioned instructions expressing federal due process principles, the trial judge further instructed the jury that *anything* he might say about the law, including *any* of his other instructions, was merely advisory, that the jury was not *"in any way"* bound by his instructions, that the jury was *"free to reject"* his instructions on the law, that it could arrive at its own independent conclusions as to the law, and that the jury was to make the sole determination as to "what the law is in this case." While such an instruction may not empower the jury to apply what it believes the law *ought to be,* clearly such an instruction authorizes the jury to find that the *existing law* is different than that set forth in the judge's instructions. And as the trial judge's instructions on such matters as burden of proof, standard of proof, presumption of innocence, right not to testify, etc., reflect the holdings of the United States Supreme Court, the challenged instruction authorizes the jury to find that the existing law on these

federal due process requirements is different than that set forth by the Supreme Court. This result would appear to be inconsistent with one hundred and sixty years of American constitutional history, dating at least from *Cohens v. Virginia,* 6 Wheat. 264, 5 L. Ed. 257 (1821).

Under the majority's construction of Article 23 of the Declaration of Rights, the jury in a criminal case is the judge of the law only with respect to "conflicting interpretations of the law of the crime." That Article 23, as so construed, might not violate the Fourteenth Amendment, is no answer to the due process issue presented by the instruction in the instant case. Because a narrow instruction, that the jury may resolve conflicting interpretations of the law of the crime, might have been unobjectionable on due process grounds, does not mean that the broad instruction given in this case comports with due process.

(b)

The majority purports to justify its refusal to review the broad "advisory" instruction given in this case by asserting that no issue has been raised in this Court concerning the propriety of the instruction given, that at trial the defendant did not object to the specific instruction given, and that "[i]f ... the basis of the petitioner's objection was the specific instruction given, ... that basis was neither properly presented to nor ruled upon by the trial court." The majority treats the case as if it were a declaratory judgment action challenging Article 23 on its face, rather than a criminal trial involving a complaint over jury instructions. A review of the record demonstrates that there was an objection to the advisory instruction given, and that the issue has continuously been preserved for appellate review.

After the trial court gave preliminary instructions to the jury, including the instruction that the jurors were the judges of the law, that everything the court said was merely advisory, that the jurors were free to reject the court's advice and arrive at their own independent conclusions as to the

law, etc., the following colloquy occurred between the court and defense counsel (transcript pp. 127-128):

"Judge Clark: Mr. Falcon, do you have any exceptions to the preliminary instructions?

"Mr. Falcon [Defense Attorney]: Yes, Your Honor. The Defense takes exception to the Court's failure to give Instruction requested in #5 as to the binding nature of the Court's instructions, rather than advisory instructions.

\* \* \*

"Judge Clark: Very well, you are overruled."

Later, at the conclusion of the court's final jury instructions, the transcript reads as follows (pp. 2350-2351, emphasis supplied):

"[The Court:] In conclusion, you are not to allow sympathy, passion or prejudice to in any way influence you in reaching unanimous verdicts based solely upon the evidence that has been adduced in this case and *the law as you determine it to be* and applied by you to the facts that you have found to be true facts of this case.

"Now, Mr. Campen [State's Attorney], do you have any exceptions to the Court's Instructions? If there are going to be exceptions I'll excuse the jury.

"State: May we have a moment to consult?

"Court: Yes. *Will you have exceptions?*

"Mr. Falcon: *Yes, Your Honor.*

\* \* \*

"Court: Mr. Falcon, I'll hear you.

"Mr. Falcon: First of all, Your Honor, the defense wishes to except to the Court's failure to give the instruction requested by the defense in paragraph two of the Request for Final Instructions, that is,

that the instructions of the Court are binding on the jury and not merely advisory.

"Court: You're overruled there. You well know the law of Maryland.

"Mr. Falcon: Well, let me note an exception to that.

"Court: Right."

Following the State's argument to the jury, defense counsel at a bench conference stated that he had certain exceptions to the State's argument. Before he could say more, the trial court made it clear that it was "only interested in misstatements of fact" and that counsel could "argue the law any way . . . [they] want to." (Transcript p. 2421.)

Finally, at the argument on the defendant's motion for a new trial, counsel argued "that to give instructions as advisory rather than binding violates fundamental constitutional due process." (Transcript, Vol. 6, p. 12.) Defense counsel went on to assert that advisory instructions are violative of the Due Process Clause of the Fourteenth Amendment. (*Id.* at p. 13.) The trial court rejected the argument on the ground that the appellate courts of Maryland had upheld the giving of advisory instructions. (*Id.* at pp. 12-13.) The defendant's attorney's reply to the trial court was as follows (*id.* at 13, emphasis supplied):

"The Maryland *pattern instructions* have never been passed on by a court as far as counsel is aware of in the last ten years or so. That is, during that period when the Federal Constitution began to play a large part."

The court nevertheless rejected this argument on the ground that the appellate courts "had every opportunity to declare it unconstitutional if they so desired." (*Ibid.*)

In light of this record, I have great difficulty understanding the majority's conclusion that the defendant's attorney was not objecting to the specific "advisory" instructions given in this case but was raising only the question, as stated by the majority, of "whether

Article 23 of the Declaration of Rights . . . is unconstitutional
because the provision, as construed by this Court, facially
deprives a defendant of the federally secured right to due
process of law." At no time did defense counsel or the trial
judge mention "facial" constitutionality, Article 23 or this
Court's construction of that Declaration of Rights provision.
The dispute related to the *instructions,* both those actually
given and the proffered one which was refused. Twice the
trial court asked defense counsel whether there were
exceptions to the instructions given, and twice counsel
answered "Yes." The defendant's attorney explained that
the proffered binding instruction should have been given, as
"the instructions of the Court are binding on the jury and not
merely advisory." The advisory instructions actually given,
and the binding instruction requested, were mutually
exclusive. Clearly counsel was objecting to the giving of
advisory instructions in lieu of the requested binding
instruction.

The argument on the motion for a new trial, upon which
the majority opinion (footnote 2) places such great weight,
confirms the nature of the defendant's objection and the trial
court's ruling. Again there was no mention of Article 23 or
"facial" constitutionality. Instead, the defendant referred to
the validity of the Maryland pattern *instruction* not having
been ruled upon during the last ten years, and the trial court
rejected the argument because the appellate courts had
every opportunity to consider it. It is clear that the defen-
dant was complaining about an *instruction* actually given in
criminal cases and not the facial validity of a constitutional
provision. Presumably, by "pattern," the defendant meant
the standard type of advisory instruction given in this case,
as that is the type of instruction required by Maryland Rule
757 b. Rule 757 b mandates that *in every case* involving jury
instructions, the court *shall* instruct the jurors that they are
the judges of the law. There are no exceptions in the rule
excluding federal constitutional requirements or anything
else.[3]

---

3. Sections b and g of Maryland Rule 757 provide (emphasis added):
   "b. *How Given.*
   The court may, and at the request of any party shall, give those

Moreover, by pointing out to the trial court that it has been over the "past ten years or so" that federal constitutional requirements "began to play a large part," one prong of defense counsel's due process argument became obvious. It was that the standard type of Maryland advisory jury instruction, authorizing the jury to disregard *all* of the trial judge's other instructions on the law, was inconsistent with federal constitutional requirements that in recent years have been held applicable to state criminal proceedings.

In the Court of Special Appeals, the first argument in the defendant's brief (p. 19) was that the advisory instruction given by the trial court denied him due process of law. In the defendant's petition for a writ of certiorari, the complaint was over the instructions actually given in this case. The first question presented was: "Did the trial court deny Petitioner the right to due process guaranteed by the XIV Amendment when it gave advisory rather than binding instructions." The principal argument set forth in the petition was that, in recent years, since this Court considered the matter in *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1962), and *Slansky v. State,* 192 Md. 94, 63 A.2d 599 (1949), the Supreme Court has held that several federal constitutional requirements are applicable to state court criminal proceedings, and that the instruction telling the jury that it is not "in any way bound" by the other instructions on the law, permits the jury to ignore federal constitutional standards.[4] This issue presented in the peti-

___

advisory instructions to the jury as correctly state the applicable law. The court may give its instructions orally or, with the consent of the parties, in writing. The court need not grant any requested instruction if the matter is fairly covered by the instructions actually given. *In every case in which instructions are given to the jury the court shall instruct the jury that they are the judges of the law and that the court's instructions are advisory only.*"

"g. *Argument.*

Nothing in this Rule precludes any party from arguing that *the law applicable to the case* is different from the law described in the advisory instructions of the court."

4. The defendant's argument went on (Petition for a Writ of Certiorari, p. 5):

"Hence, the jury is free to ignore the constitutional requirement of proof beyond a reasonable doubt, *Winship,* the defendant's right to

tion was the reason for the certiorari grant in this case. It was certainly an issue properly before this Court under Rule 813. Now the Court declines to decide the question on the theory that the defendant has never challenged the specific advisory instructions given in this case.

There is no logical reason for treating the defendant's objection to the advisory instructions in this case as an attack only upon the facial constitutionality of Article 23. Even if Article 23 does not make the jury the judge of the law with respect to federal constitutional matters, and thus is not facially invalid on this ground, the broad advisory *instructions* given in this case were facially unconstitutional because they authorized the jury to disregard other instructions embodying federal due process requirements. The defendant clearly objected to the advisory instructions in this case on federal due process grounds; the objection was overruled by the trial court, and the defendant has continuously preserved the same position throughout the appellate process.

If the basis for the majority's narrow view of the issue is the defendant's request at trial for a totally binding instruction, rather than a partially binding and partially advisory instruction reflecting this Court's present construction of Article 23, the majority's reasoning would still be fallacious. There were in this case no "conflicting interpretations of the law of the crime" which would fall within the jury's province under the majority's construction of Article 23. Therefore, even under the majority's opinion, the defendant was entitled to the requested instruction that the trial judge's instructions are binding and not merely advisory. The instructions to be given are to reflect the evidence and issues, and not abstract principles not applicable to the case. *See Blackwell v. State,* 278 Md. 466,

---

remain silent, *Malloy, Chapman.* the standard of proof of every element, *Mullaney.* Obviously to leave a *constitutional* standard, such as the presumption of innocence to the whims of a jury violates due process. At a minimum, a defendant is entitled to an instruction which requires, rather than advises a jury that there exists a presumption of innocence and that the State has the burden of proof in every element of a crime."

477-478, 365 A.2d 545 (1976), *cert. denied,* 431 U.S. 918, 97 S. Ct. 2183, 53 L. Ed. 2d 229 (1977), and cases there cited.

Furthermore, if there had been in this case arguable "conflicting interpretations of the law of the crime," I would not expect an attorney to have tailored his objection to this Court's present construction of Article 23 and requested a partially binding and partially advisory instruction reflecting that construction. This Court's position on the matter is anything but consistent. After the decisions in the prior cases relied on by the majority for its narrow construction of Article 23, this Court, effective July 1, 1977, promulgated the present version of Maryland Rule 757 b which requires, without qualification, that in every case the jury is to be told that the court's instructions on the law are only advisory.[5] Therefore, when sitting in its rule-making capacity, providing "precise rubrics" for lawyers and trial judges to follow,[6] the Court accords Article 23 its literal meaning. On the other hand, in its adjudicatory capacity, the Court today construes Article 23 quite differently.

(c)

The question of the facial constitutionality of Article 23 as construed in the majority opinion is largely a theoretical matter, having little relationship to the trial of criminal cases in Maryland. In the seven years I have been a judge of this Court, reviewing hundreds of criminal cases,[7] I have never come across a jury instruction comporting with this Court's present view of Article 23. Experienced Maryland criminal trial lawyers have never encountered such an instruction. Instead, the typical instruction given in criminal cases is like the challenged instruction in the case

**5.** Former Rule 756 b, in effect prior to July 1, 1977, contained the same requirement.

**6.** *See, e.g.,* King v. State Roads Comm'n, 284 Md. 368, 372, 396 A.2d 267 (1979) (per Digges, J.), pointing to "the established principle that the Maryland Rules are precise rubrics that are to be strictly followed."

**7.** In addition to the cases we decide after full briefing and argument, this Court receives, and each member reviews, about 500 petitions for writs of certiorari each year. Approximately fifty per cent of them are in criminal cases.

at bar. Although jurors may be told, as they were in the instant case, that they should not arbitrarily interpret the law to make it conform to what they believe it *ought to be* or that they should not "arbitrarily make new law," nevertheless they are invariably told that it is entirely their province to determine the *existing law*, that *all* of the court's instructions are merely advisory, and that the jurors "are not in any way bound" by any of the court's instructions.

Article 23 of the Maryland Declaration of Rights flatly states, in unambiguous language, that in "all criminal cases the Jury shall be the Judges of the Law . . . ." The only limitation is that the court is empowered to pass upon the sufficiency of the evidence. The United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 89, 83 S. Ct. 1194, 1198, 10 L. Ed. 2d 215 (1963), observed that Article 23 "does not mean precisely what it seems to say." The observation is an accurate characterization of the theory set forth in some of this Court's opinions, including the majority opinion in the case at bar. However, it is not an accurate characterization of Maryland practice. The instruction given in this case, the instruction required by this Court's Rule 757, and the standard instruction given in virtually all Maryland criminal jury trials, is based upon the language of Article 23 as if that provision meant precisely what it says.

The majority opinion fends off a federal constitutional challenge to jury instructions reflecting the literal language of Article 23 and Rule 757 by misreading the record, viewing the issue as if it were an attack upon the facial constitutionality of Article 23 as construed by this Court, and giving a narrow construction to Article 23 which is not supported by the language of Article 23 and which has no relationship to the jury instructions actually given in this case. The majority then upholds Article 23 as so construed and affirms the conviction on this basis. I believe Article 23 to be invalid on its face, even as construed by the majority, for the reasons set forth in Parts I and II of this dissenting opinion. However, assuming for the purposes of argument that Article 23, as now construed, is facially constitutional, the defendant's conviction should nevertheless be reversed.

The advisory instructions given, to which objection was made, authorized the jury to disregard the court's instructions regarding several federal constitutional requirements. Because the challenged instruction actually given by the trial court was inconsistent with the Due Process Clause of the Fourteenth Amendment, the defendant should be awarded a new trial.

Judge Cole has authorized me to state that he concurs with the views expressed in Part III of this dissenting opinion, that he would reverse on this ground, and that he would not reach the issues dealt with in Parts I and II.

Judge Davidson has authorized me to state that she concurs with the views expressed in this dissenting opinion.